402 F.2d 510
 TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS LOCAL UNION 524, etc., Appellants,
v.
D. S. BILLINGTON, d/b/a Billington Builders Supply and Billington Builders Supply, Inc., Appellee.
 No. 22046.
 United States Court of Appeals Ninth Circuit.
 October 28, 1968.
 
 George H. Davies (argued), of Vance, Davies, Roberts & Bettis, Seattle, Wash., for appellants.
 Perry J. Robinson, Yakima, Wash., for appellee.
 Before MERRILL and CARTER, Circuit Judges, and WHELAN,* District Judge.
 JAMES M. CARTER, Circuit Judge.
 
 
 1
 This is an action for specific performance of an arbitration clause in a collective bargaining agreement. The appeal raises the following question: Whether the employer was bound by the offer of a purported agent made to the union for a collective bargaining agreement which the union claims it accepted.[1]
 
 
 2
 The appellant, Teamsters, Chauffeurs, Warehousemen and Helpers Local 524 (hereafter the Union), commenced the action below against D. S. Billington, an individual doing business as Billington Builders Supply (hereafter Billington) and Billington Builders Supply, Inc. (hereafter Billington Corporation), to compel specific performance of an arbitration clause in a collective bargaining agreement. The case was tried on the merits; findings of fact, and conclusions of law were made and a judgment of dismissal entered.
 
 
 3
 Although Billington and Billington Corporation were represented by counsel in the court below, neither has seen fit to file an appellee's brief supporting the judgment, nor has either of said appellees appeared at argument. Although parties may be defaulted in a trial court for failing to appear at the trial, on appeal we must consider the record made below and the brief of the appellant.
 
 THE FACTS
 
 4
 The facts before the trial court were not in dispute, and it would serve no useful purpose to enumerate them in detail.
 
 
 5
 Billington, commencing in 1954 had consecutive collective bargaining agreements with the Union. He appointed as his agent for the negotiation of the agreements, one Velikanje, an attorney who had represented a group of employers, engaged in the sale of building materials in the Yakima area, since the end of World War II, and had negotiated collective bargaining on their behalf.
 
 
 6
 The last agreement negotiated between Billington and the Union, by Velikanje, prior to the one in question, remained in force from April 1, 1961 until April 1, 1963. The agreement provided in part that, "It may be opened for negotiation of changes or termination by either party giving sixty (60) days notice prior to April 1, 1963." No notice of termination was given by either party, but the Union by letter to Billington dated January 2, 1963, gave sixty (60) days "notice of * * * desire to open the agreement for the negotiation of changes." Billington turned the letter over to attorney Velikanje and instructed him to negotiate the agreement with the Union. Velikanje began negotiations on behalf of Billington and other employers in the building materials business.
 
 
 7
 Subsequently on February 15, 1963, Billington and others formed the appellee Billington Corporation. Billington transferred the assets of the business which he had operated as a sole trader to Billington Corporation. One Ormand Fluegge became president and general manager of the corporation.
 
 
 8
 After the formation of Billington Corporation, Fluegge, its president, attended one of the meetings of the employers on May 29, 1963, and on that date informed Velikanje of the formation of Billington Corporation. Fluegge did not tell Velikanje not to represent Billington Corporation. Fluegge stated that he was not sure the corporation would sign the contract, but apparently gave no indication of any intent to change the existing delegation of bargaining authority. Thereafter, without further word from the corporation, Velikanje proceeded with negotiations and kept Billington Corporation advised as to the progress of the meetings with the Union. On September 3, 1963, Velikanje made an offer to the Union, a copy of which was sent to Billington Corporation. On September 6, 1963, the Union accepted the offer. Velikanje advised Billington Corporation of the acceptance. Thereafter, some time between September 14 and September 30, 1963, Fluegge called Velikanje stating that Billington Corporation was not interested in signing the collective bargaining agreement.
 
 
 9
 In March 1965, a question concerning vacation pay due James Smith, an employee of Billington Corporation arose, and the Union first learned that Billington Corporation had not signed the collective bargaining agreement. The Union then requested that the matter be submitted to arbitration. Defendants refused and the suit to compel arbitration was then commenced.
 
 
 10
 Other facts in the record are material to our problem. (1) From February 15, 1963, the date of the incorporation of Billington Corporation until April 1, 1963, the anniversary date of the 1961-1963 collective bargaining agreement; and from April 1, 1963 until James Smith left the employ of Billington Corporation in February 1965, Billington Corporation observed all the terms and conditions of the 1961-1963 and the 1963-1966 collective bargaining agreements.
 
 
 11
 (2) The 1963-1966 collective bargaining agreement provided for a wage increase effective September 1, 1963 and for a further ten cents an hour increase on April 1, 1964. James Smith received his retroactive pay to September 1, 1963. He received the vacation and the over time pay provided in the agreement.
 
 
 12
 (3) The 1963-1966 agreement required payment of $17.85 per month into the Washington Teamsters Welfare Trust and payment of ten cents an hour into the Western Conference of Teamsters Pension Trust Fund. Billington Corporation made both the Health and Welfare and Pension monthly premium payments for James Smith until his termination.
 
 
 13
 (4) Velikanje billed the employers in the amount of each one's proportionate share for his services in negotiating the 1963-1966 agreement. Billington Corporation paid Velikanje its share.
 
 
 14
 The trial court found that Velikanje was not authorized to act as a bargaining representative for Billington Corporation, and that neither Billington Corporation nor its authorized representative entered into negotiations with the Union, and that defendant Billington Corporation informed Velikanje and the Union that it did not wish to enter into a Union contract and would not do so.
 
 
 15
 Where the facts are not in dispute an appellate court is not bound by the trial court's finding of ultimate fact or conclusions of law. Home Indemnity Co. of N. Y. v. Standard Accident Ins. Co., 167 F.2d 919, 923 (9 Cir. 1948); Kuhn v. Princess Lida of Thurn & Taxis, 119 F.2d 704, 705-706 (3 Cir. 1941).
 
 
 16
 Billington Corporation was bound by the terms of the 1961-1963 agreement which was in existence on the date of incorporation; it was bound as a successor employer. See Wackenhut Corp. v. International Union, United Plant Guard Workers of America, Local 151, 332 F.2d 954 (9 Cir. 1964); cf. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 548, 84 S.Ct. 909, 11 L. Ed.2d 898 (1964).
 
 
 17
 The corporation through the actions of President Fluegge, evidenced its knowledge and ratification of the prior employment of Velikanje as its agent in the negotiation of a new agreement. At no time during the succeeding months of bargaining did the corporation withdraw the authority delegated to Velikanje.
 
 
 18
 Section 301 of the National Labor Relations Act as amended (29 U.S.C. § 185 (1964)) reads in part:
 
 
 19
 "Determination of question of agency (e) For the purposes of this section, in determining whether any person is acting as an `agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling. June 23, 1947, c. 120, Title III, § 301, 61 Stat. 156."
 
 
 20
 In International Longshoremen's & Warehousemen's Union v. Hawaiian Pineapple Co., 226 F.2d 875, at 880 (9 Cir. 1955), this court said:
 
 
 21
 "Probably the practical result of the section [§ 185(e)] in the case of labor unions was to restore the general rules of agency, particularly the rules of apparent authority which had been curtailed by the Wagner Act. [citation] * * *"
 
 
 22
 Undoubtedly the section operates in the same manner as to agents of employers.
 
 
 23
 It was apparent that Velikanje was authorized to act as negotiating agent for Billington Corporation. It was also apparent that in this capacity he submitted to the union the final employer offer of September 3, 1963. When the union accepted that final offer on September 6, 1963, Billington Corporation became bound by its terms.[2] The corporation's later refusal to sign the agreement came too late.[3] Even this late act of repudiation was apparently not final for the corporation complied with the terms of the new contract and paid its proportionate share of Velikanje's fee.
 
 
 24
 The trial court erred in its findings as to the agency of Velikanje and its conclusion as to whether a labor agreement resulted from the bargaining. We acknowledge that the trial court did not have the advantage, in this court, of an appellee's brief and the advocacy of counsel supporting its decision.
 
 
 25
 The judgment is reversed and the cause remanded to the district court.
 
 
 
 Notes:
 
 
 *
 Hon. Francis Whelan, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 Although argued below and urged on appeal by the appellant, this court does not pass on whether a "multiemployer bargaining unit" existed. This finding is unnecessary in this case
 
 
 [2]
 Normal rules of offer and acceptance govern in collective bargaining. See Lozano Enterprises v. NLRB, 327 F.2d 814 (9 Cir. 1964)
 
 
 [3]
 Further, execution of a writing embodying the terms of the already existing contract does not affect its validity. See Roadway Express, Inc. v. General Teamsters, etc., Local 249, 330 F.2d 859 (3 Cir. 1964); Rabouin v. NLRB, 195 F. 2d 906, 910 (2 Cir. 1952)