**Ward KING, Plaintiff-Appellant,**

v.

**LABORERS INTERNATIONAL UNION OF NORTH AMERICA, UNION LOCAL NO. 818, Defendant-Appellee.**

**No. 20583.**

United States Court of Appeals, Sixth Circuit.

May 13, 1971.

O'Sullivan, Senior Circuit Judge, dissented and filed opinion.

Robert B. Wallace, for amicus curiae.

Alfred W. Blumrosen, Newark, N. J., for appellant.

Stanley P. Hebert, General Counsel, David R. Cashdan, Robert B. Wallace, Attys., Equal Employment Opportunity Commission, Washington, D. C., on the brief for U. S. Equal Employment Opportunity Commission, amicus curiae.

Jerry A. Farmer, Knoxville, Tenn., Norbert J. Slovis, Jerry A. Farmer, Knoxville, Tenn., on the brief; Lockett, Slovis, Weaver & Johnson, Knoxville, Tenn., of counsel, for appellee.

Before CELEBREZZE and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is an appeal from the United States District Court for the Eastern District of Tennessee, involving an alleged practice of discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e et seq., as amended in 1966.

In May, 1968, Ward King filed a charge of discrimination with the Equal Employment Opportunity Commission, (hereinafter referred to as the EEOC) alleging that the Laborers International Union of North America, Local No. 818 (hereinafter referred to as the Union)

"committed an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964 by unlawfully refusing [Mr. King] equal opportunity to picket because of his race."

Upon investigation, the EEOC found reasonable cause to believe that the Union had violated its statutory duty not "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race * * * [or] color" by unlawfully refusing to Mr. King, because of his race, an equal opportunity to be on the Union's picket lines. 42 U.S.C. § 2000e-2(c) (1) (1964). On May 29, 1969, the EEOC advised Mr. King it was unable to obtain voluntary compliance through conciliation and that he could file suit pursuant to statute. 42 U.S.C. § 2000e-5 (1964). This civil action for private enforcement of Title VII right of the Civil Rights Act of 1964 ensued.

In January, 1970, counsel for Mr. King moved for a jury trial and such motion was granted. In February, 1970, a trial was conducted. At the close of the evidence, the District Court charged the jury, in relevant part, as follows:

"Members of the jury, Ward King filed this action under Title 42, Section 200e-5 of the United States Code, against defendant Laborer's International Union of North America, Union Local No. 818, Knoxville, Tennessee, claiming discrimination by defendant because of his race. He claims that the unlawful discrimination started around March, 1968 and continued to June 17, 1969, the later date being the date he filed this action.

"He further says that he is entitled to recover those back wages or back compensation, whatever you want to call it, in the amount of $383.00 and other damages as the direct and proximate result of the alleged unlawful discrimination.

\* \* \* \* \* \*

"Plaintiff says that the defendant would not allow him to share equally in picketing opportunities made available to members of the Union because of his race.

\* \* \* \* \* \*

"Defendant admits that the plaintiff has not been used as a picket in some instances but that this action has been based upon the plaintiff's condition, attitude or actions while used as a picket and that he has never been denied such picket rights because of his race.

\* \* \* \* \* \*

"At the outset the Court charges the jury that in order for there to be a violation of the Fair Employment Act, a portion of which has been read to you, there must be an intentional pattern and practice upon the part of this Union to discriminate against this plaintiff because of his race and not an isolated instance of discrimination. If there was an intentional pattern of discrimination against this plaintiff because of his race, then there was a violation of the Act and if plaintiff suffered any damages as a direct and proximate result of such vi-

olation, he would be entitled to recover in this lawsuit. On the other hand, if there was no intentional pattern and practice of discrimination by this Union against this plaintiff by reason of his race, the plaintiff would not be entitled to recover in this lawsuit.

"The burden is upon the plaintiff. Before plaintiff can recover in this lawsuit he must show that this Union intentionally followed a practice or pattern of discrimination against him by reason of his race. Where the proof is upon a particular person, he must carry that proof by what is known as a preponderance of the evidence. That means the greater weight of the evidence. It may or may not be based on the number of witnesses introduced but it depends on the believability of the jury as to whether or not the party has carried the burden of proof.

\* \* \* \* \* \*

"The Court charges you that if you find from the preponderance of the evidence that defendant followed a pattern or practice of discrimination against this plaintiff because of his race by refusing to allow this plaintiff to participate equally in picketing opportunities made available to members of Local Union 818 because of his race during the period of October 23, 1967 to July 1, 1969, and that as a direct and proximate result thereof plaintiff sustained damages, in that situation plaintiff would be entitled to recover.

"On the other hand, if you find that the preponderance of the evidence fails to show that they followed a practice of discrimination against this plaintiff because of his color; or if you find that plaintiff was discriminated against but further find that he did not sustain any damages as a direct and proximate result of such alleged discrimination, plaintiff would not be entitled to recover in this lawsuit.

"In the event you find for the plaintiff, he is entitled to recover such damages as directly and proximately resulted from the alleged illegal discrimination, including any loss of compensation resulting from defendant's refusal to allow him to picket solely on account of his race."

Counsel for Appellant did not raise any objection to the Court's charge.

Before considering the substantive issues raised on appeal, we turn to the procedural issues raised by the Appellee. On July 14, 1970, three months after Appellant filed his notice of appeal but less than a month after this Court denied Appellant's motion for a transcript at the Government's expense, the Appellee moved for dismissal. Appellee contended it was entitled to a dismissal because the Appellant had not filed a transcript within forty days of the original notice of appeal. Rules 11(a), 12(c), Federal Rules of Appellate Procedure, and that a brief had not been filed within forty days after the date on which the record had been filed. Rule 31(a) and (c). Federal Rules of Appellate Procedure.

■ The rules cited by Appellee are stated in permissive, rather than mandatory language. We are not required to dismiss every appeal which does not meet each of the time limitations in the above-stated rules. See with regard to Rules 11 and 12, Federal Rules of Appellate Procedure, Black v. United States, 269 F.2d 38 (9th Cir. 1959) cert. denied 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357; United States v. Bowen, 310 F.2d 45 (5th Cir. 1962); Watley v. United States, 221 F.2d 476 (5th Cir. 1955). See with regard to Rule 31, Federal Rules of Appellate Procedure, Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union 524 v. Billington, 402 F.2d 510 (9th Cir. 1968); United States v. Edwards, 366 F.2d 853 (2d Cir. 1966) cert. denied 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782; Phillips v. Employers Mutual Liability Ins. Co. of Wisconsin, 239 F.2d 79 (5th Cir. 1956).

■ In the instant case, the Appellant duly proceeded from the District Court in forma pauperis and without aid

of assigned counsel. His notice of appeal was filed in a timely fashion. Mr. King diligently proceeded to appeal the District Court's adverse decision with regard to the printing of a transcript at Government expense, to have the EEOC represent his interests on appeal and to state the issues upon which his appeal was based. Had the Appellant requested an extension of time for the disposition of his motion to obtain a transcript at Government expense, we would have granted such an extension of time. In view of the Appellant's obvious inexperience with the judicial procedure and his good faith pursuit of his remedies, we believe it would be improper and unjust to dismiss his appeal for a simple failure to make a request for an extension of time.

In September, 1970, we permitted the EEOC to represent Appellant's interests on appeal. There have been no subsequent delays. Further, Appellee has not alleged any uncured prejudice by the delays which occurred before its motion to dismiss. Accordingly, Appellee's motion to dismiss pursuant to Rules 11, 12 and 13, Federal Rules of Appellate Procedure, is hereby denied.

We now turn to the substantive issues raised on appeal. The EEOC contends, in behalf of itself and the Appellant, that the District Court's charge was so defective in at least three important respects that it constituted plain error, both "obvious and prejudicial." O'Brien v. Willys Motors, Inc., 385 F.2d 163, 166 (6th Cir. 1967). See United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936). We agree.

■ First, the EEOC contends that the District Court improperly instructed the jury that in order for there to be a violation of Title VII "there must be * * * [a] pattern and practice * * * [of discrimination], not an isolated instance of discrimination." Such an instruction to the jury, the EEOC maintains, constituted "obvious and prejudicial" error.

Congress has provided that:

"(c) It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex or national origin; * * * 42 U.S.C. § 2000e(c) (1)."

To enforce an aggrieved party's statutory rights and eliminate unlawful employment practices, Congress provided for three types of proceedings in federal courts: (1) after proceedings by the EEOC, a person claiming to be aggrieved may initiate a private civil action, 42 U.S.C. § 2000e–5(e); (2) after an order of a court issued in a civil action, the EEOC may commence proceedings to compel compliance with the prior order of the court, 42 U.S.C. § 2000e–5(i), EEOC v. Local Union No. 189 et al., 438 F.2d 408 (6th Cir. 1971); and (3) pursuant to certain limited statutory circumstances, the United States Attorney General may bring a civil action, 42 U.S.C. § 2000e–6

■ The statutory language authorizing the commencement of a private civil suit by an aggrieved person under Title VII differs materially from the language authorizing the initiation of a civil suit by the United States Attorney General. If an aggrieved individual alleges the existence of an *"unlawful employment practice"* as defined in 42 U.S.C. §§ 2000e–2, 2000e–3, he has made a sufficient substantive evidentiary showing to form a basis for a private civil action, 42 U.S.C. § 2000e–5. However, the United States Attorney General must allege that he "has reasonable cause to believe that [a certain person or group of persons] * * * is engaged in a *pattern or practice of resistance* to the full enjoyment of any of the rights secured by this subchapter [42 U.S.C. § 2000e]; and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein de-

278

scribed." (Emphasis added) 42 U.S.C. §§ 2000e–5(e), 2000e–6, Jenkins v. United Gas Corp., 400 F.2d 28, 32–33 (5th Cir. 1968). See Newman v. Piggie Park Enterprises, 390 U.S. 400, 401 n. 2, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

The District Court erred in charging the jury in accordance with the high statutory standard of proof required by Congress of suits brought by the United States Attorney General. 42 U.S.C. § 2000e–6. Whereas it should have charged the jury in accordance with the statutory standards set out in 42 U.S.C. §§ 2000e–2, 2000e–5. The jury should have been instructed that a single instance of discrimination may form the basis of a private suit.

Congress established the private aggrieved party as a vindicator of the public right of compliance with the Civil Rights Act of 1964. In securing "compliance with the law," Newman v. Piggie Park Enterprises, 390 U.S. at 401, 88 S. Ct. 964 an aggrieved party necessarily seeks to eliminate an act or acts of discrimination as they affect him. Numerous private cases have found a Title VII violation upon showings of proof limited to a single act (e. g. a single breach of the duty of fair representation; a discharge or failure to train for advancement based upon racial motivations or causes) or a single practice of unlawful discrimination against the aggrieved party. St. Clair v. Local Union No. 151, 422 F.2d 128 (6th Cir. 1969); Everett v. Trans-World Airlines, 298 F.Supp. 1099, 1102 (W.D.Mo.1969); Culpepper v. Reynolds Metals, 296 F.Supp. 1232 (N.D.Ga.1970). See Phillips v. Martin Marietta, 401 U.S. 542, 91 S.Ct. 496, 28 L.Ed.2d 613 (1971). We do not believe that a jury could reasonably have understood the District Court's charge to have permitted a finding in favor of Appellant in those instances where only a single act or practice of discrimination was shown. Title VII of the Civil Rights Act of 1964 clearly contemplates that private litigants may succeed in a civil action upon such a showing. We find that the District Court's charge placed

an "obvious and prejudicial" burden upon the Appellant.

Second, the District Court's charge on several separate occasions indicated that the Appellant would have to prove the Appellee engaged in an "intentional pattern" or an "intentional pattern and practice."

██ While actual or implied intent to discriminate on an unlawful basis is a necessary element of an action brought by the United States Attorney General, 42 U.S.C. § 2000e–6, it is not expressly included as a pre-requisite to a private civil suit, 42 U.S.C. § 2000e–5(e). In a private civil suit, the actual or implied intent of the party which has allegedly committed an unlawful employment practice becomes more relevant in determining whether injunctive remedies are available. 42 U.S.C. § 2000e–5(g). See Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980, 995–997 (5th Cir. 1969). Assuming, without deciding, that some intent to discriminate is a necessary element in every case of a private litigant, we find the District Court erred in failing to explain to the jury that such an intent may be inferred from the totality of the Union's conduct, and the circumstances leading to the purported act of discrimination.

██ Third, we find the District Court erroneously instructed the jury that damages, if any, based on loss of compensation to Mr. King should be limited to those resulting from the Union's alleged refusal to allow him to picket "solely on account of his race."

██ Appellant was entitled to an instruction which permitted him to recover lost compensation unless there existed some other reason—"irrespective of [race]"—which would also form a valid non-discriminatory basis for the discrimination (e. g. inability to do the job assigned). 42 U.S.C. § 2000e–5(g). Phillips v. Martin Marietta, 401 U.S. at 542, 91 S.Ct. 496 (1971). Thus, if one is unlawfully discriminated against in violation of Title VII, an employer need

not reinstate him or grant back pay if it can be shown that the employer also had a lawful non-discriminatory motivation for his actions which when considered by itself would have caused the same result as his discriminatory purpose. But where it can be shown that discrimination on the basis of race, color, religion, sex or national origin was, in part, a causal factor in a discharge or refusal to hire the aggrieved party, the aggrieved party is statutorily entitled to damages of lost compensation. 42 U.S.C. § 2000e–5(g). In St. Clair v. Local Union 515, 422 F.2d 128, 132 (6th Cir. 1969), this Court found a jury instruction which permitted recovery in excess of Title VII statutory limitations to be "plain error." Similarly, we find that the District Court's charge which unduly limited the Appellant's statutory right to loss of compensation under certain circumstances was also "plain error."

Based upon the errors in the District Court's charge to the jury, the judgment of the District Court is vacated and the matter is remanded for a new trial. The question of whether the District Court erred in granting Appellant's motion for a jury trial was not raised on appeal. However, upon remand, it would be well for the District Court to consider the growing body of jurisprudence which holds that the basic equitable issues involved in Title VII cases should not be subject to a jury determination. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir. 1969); Gillin v. Federal Paper Board Co., Inc., 52 F.R.D. 383 (D. Conn.1970); Moss, Jr. v. Lane Co., Inc., 50 F.R.D. 122 (W.D.Va.1970); Long v. Georgia Kraft Co., 328 F.Supp. 681 (N. D.Ga.1969); Madlock v. Sardis Luggage Co., 302 F.Supp. 866 (N.D.Miss.1969); Hayes v. Seaboard Coastline Railroad Co., 46 F.R.D. 49, 52–53 (S.D.Ga.1968); Cheatwood v. South Central Bell Telephone & Telegraph Co., 303 F.Supp. 754, 755–756 (M.D.Ala.1968). See 110 Cong. Rec. 7255 (1964). *See also*, Culpepper v. Reynolds Metals Company, 296 F. Supp. 1232, 1239–1242 (1969) reversed and remanded on other grounds, 421 F. 2d 888 (5th Cir. 1970).

Reversed and remanded.

O'SULLIVAN, Senior Circuit Judge (dissenting).

I respectfully dissent. Rule 51 of the Federal Rules of Civil Procedure provides that:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

In the case at bar, enforcement of this rule is excused by my brothers by finding that District Judge Robert L. Taylor committed "plain error" by giving the instruction set out in the majority opinion.` This accused instruction was obviously satisfactory to appellant's attorney at the time it was given, and was consistent with and relevant to the case that the plaintiff-appellant pleaded and relied on for his recovery.` In my view, the instruction not only was not "plain error," it was not error at all. I will, however, confine my discussion to the claim of "plain error."

I read O'Brien v. Willys Motors, Inc., 385 F.2d 163 (6th Cir. 1967) as limiting our use of "plain error" to excuse obedience to Rule 51 to situations where the claimed error is "obvious and prejudicial to a party." We there recited the United States Supreme Court's advice as to when the "plain error" rule should be invoked. In United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557 (1936), the Supreme Court said:

" 'In exceptional circumstances, especially in criminal cases, appellate courts, *in the public interest*, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.' " (Emphasis supplied.)

In Eaton v. United States, 398 F.2d 485, 486 (1968), we said:

"The plain error rule was intended to be and should be applied to serve rather than to subvert the ends of justice. The rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice."

In Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), Mr. Justice Douglas, speaking for a unanimous court, expressed that view that "plain error" should not be employed to permit a litigant, having chosen a style of presenting his case at trial, then to obtain a new trial because of an error to which he assented at a first trial. He said:

"Any other course would not comport with the standards for the administration of criminal justice. We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him." 318 U.S. at 201, 63 S.Ct. at 555, 87 L.Ed. at 713.

The "plain error" claimed to infect Judge Taylor's charge resides in his statement that for there to be a violation of the Fair Employment Act, "there must be an intentional pattern and practice upon the part of the union to discriminate against the plaintiff because of his race," and that plaintiff was required to prove that defendants "followed a *practice* of discrimination." It is argued that one act of discrimination is sufficient. That may indeed be true, but that was not the cause of action pleaded or relied upon by the plaintiff in this case. There is no allegation in the complaint that defendant's wrong consisted in one or more instances of discrimination. In the brief to us the EEOC heads his argument in this style:

"An Isolated Instance of Discrimination May Constitute an Unlawful Employment Practice in Violation of Title VII."

I would not take issue with such an academic and abstract assertion, but that was not what was involved in the lawsuit tried in the District Court.

I first point out that throughout its language the relevant section of the statute here relied upon—42 U.S.C. § 2000e–5—the misconduct which will violate the statute is referred to as "an unlawful employment practice" and in the subsection (g) thereof where various remedies available to a wronged employee are set out, the subsection begins:

"If the Court finds that the respondent [an employer] has *intentionally engaged* in or is *intentionally* engaging in an unlawful *employment practice* charged *in the complaint * * *.*" (Emphasis supplied.)

and then provides for the relief which can be given upon proof of a violation of the Act.

The complaint whereby plaintiff began his action asked that defendant be enjoined from continuing its *"policy, practice, custom and usage"* denying plaintiff equal employment opportunities. This basic pleading recited that plaintiff was asserting an action for the prevention of "unlawful *employment practices"* under 42 U.S.C. § 2000e–5; it charged that plaintiff sought back pay because of defendant's discriminatory *"practices"*; that it is "the *policy* of the defendant to first designate for picket duty those members of the Local who are unable to work at a regular job"; that "on *numerous occasions"* he was refused picket duty because of his race; and that the enforcement of this *practice* caused him injury. No "isolated instance" of discrimination is mentioned anywhere in the cause of action pleaded. The complaint recited that plaintiff King had filed a charge against the defendant union with the Equal Employment Opportunity Commission and a copy of that Commission's decision was attached to the Complaint filed in the District Court. The decision of the EEOC discloses that "[The] Charging

Party [plaintiff] is totally disabled 60-year-old Negro member of Respondent Union;" that "[i]t is undisputed that Charging Party is unable to engage in the type of gainful employment which Respondent normally affords its members." It appeared there also that plaintiff is receiving Social Security benefits as a totally disabled person. The Decision of the EEOC recites that:

"Respondent's records reveal that, of those individuals allowed to picket from January 1968, through August 12, 1968, Charging Party [plaintiff King] was the only picket unable to engage in regular physical labor. The records also show that Caucasian members who are capable of working at a regular job have received more frequent assignments to picket for pay during the pertinent period than Charging Party. Charging Party earned $255.00 during this period while at least one able-bodied Caucasian member earned $638.00 for picketing.

"Accordingly, circumstances underlying the difference in the amount of pay received by Charging Party and Caucasian members require close scrutiny. Respondent's record shows that, in 1967, Charging Party *received the major share of picketing earnings,* apparently, because all other members were regularly employed in the industry during this period."

The Equal Employment Opportunity Commission then concluded:

"While the matter is not entirely free from doubt, we are persuaded by Respondent's failure to explain the *pattern of picket duty assignment* which

appears to be related only to the race of the applicants." [1]

Thus, it appears that the EEOC was dealing with a *"pattern of picket duty assignment"* and neither the Commission, the District Court, nor the plaintiff's pleaded cause of action was dealing with any "isolated instance of discrimination."

The instruction given fitted the case which the plaintiff pleaded and relied upon. At the conclusion of the District Judge's charge, the following colloquy took place:

"Does either side want the jury excused while I call for suggestions or requests? If either side wants the jury excused I will.

"Mr. Henley: [The attorney for appellant King] We have no objections or further requests.

"Mr. Slovis: We have no objections or requests, Your Honor.

"The Court: Let the record show that the Court asked the attorneys for the plaintiff if plaintiff has any objections to any part of this charge or any special requests, and what was the answer, counsel?

"Mr. Henley: [The attorney for appellant King] The answer was no."

The District Court file discloses that in commencing this action appellant King was represented by three attorneys, one of whom was Senior Staff Attorney for the Legal Clinic of the University of Tennessee. Upon their motion and before trial, plaintiff's original attorneys were permitted to withdraw because "Plaintiff refuses to take their best advice and desires to obtain other

[1] It appears that appellant was totally disabled during the relevant periods, drawing maximum social security benefits. Thus, pay by the union for picketing duty was a "windfall" to appellant. He was given the "major share" of this when his fellow unionists were regularly employed, but when they were out of work it appeared that they were given more picketing duty than appellant.

A further paragraph of the EEOC Decision says:

"With respect to Charging Party's allegation that he was not paid for several occasions when he picketed for Respondent because of his race, the record clearly shows that on each occasion cited by Charging Party, Respondent paid no pickets, Negro or Caucasian. Charging Party's allegation is thus disproved by the record."

counsel who will advise him as he wishes."

In a pretrial order, it appears that the alleged wrong charged to defendant is *a pattern and practice*; no "isolated instance" is referred to in the pretrial order or in any other pleading. Plaintiff's claim was that the defendant "refused to allow plaintiff to share equally in picketing opportunities made available to members of the Local Union because of his race." The period of the alleged violations extended from October 23, 1967, to the date of the filing of the complaint, May 1, 1969, without reference to any specific date or "isolated instance." Included also in the pretrial order was the stipulation that:

> "Parties will submit trial brief * * * and include therein anything that should be told to the jury other than under Title 42, Section 2000(e)–(2) (c) (1) race discrimination as forbidden in employment."

On February 20, 1970, following the jury's verdict, the attorney who tried the case for plaintiff was allowed to withdraw as counsel. On appeal, briefs for appellant were filed amicus curiae by the staff of the General Counsel for the EEOC. The cause was argued to us by a professor from the law school of Rutgers University. I cannot join in finding "plain error" in what the District Judge did in this case.

I add the further observation that upon the retrial ordered by my brothers it should be within the discretion of the District Judge whether to allow plaintiff to withdraw his demand for a jury trial and have the case tried to the Court. The appellant, aided *on appeal* by new counsel, asks this opportunity. I do not favor allowing a litigant to try his case first before a jury, as demanded by him, and, having lost, to permit him to choose, on retrial, a different tribunal. See Johnson v. United States, *supra*, 318 U.S. 189, 201, 63 S.Ct. 549, 87 L.Ed. 704, 713 (1943).

I would affirm.