Sue L. **KENNEDY**

v.

Gov. **Mills E. GODWIN, Jr., etc., et al.**

Civ. A. No. 76–608–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 6, 1977.

Sylvia Clute, George W. Warren, IV, Richmond, Va., for plaintiff.

Henry M. Massie, Jr., John Hardin Young, Asst. Attys. Gen. of Virginia, Richmond, Va., for defendants.

---

## MEMORANDUM

MERHIGE, District Judge.

Sue Kennedy, a female employed by the Commonwealth of Virginia Department of Corrections as Assistant Superintendent for Treatment brings this Title VII action to redress alleged sexual discrimination. Jurisdiction of the Court is attained pursuant to 42 U.S.C. § 2000e–5 and 28 U.S.C. §§ 1343, 2201.

Named defendants are Mills E. Godwin, Jr., Governor; H. S. Smith, Secretary of Public Safety; J. Davis, who was at the time of the alleged acts giving rise to this suit Director of the Department of Corrections; T. Hutto, Deputy Director; R. M. Landon, Director of Adult Services; J. D. Cox, Assistant Director; A. T. Robinson and W. B. Digges, Associate Directors of Adult Services. Also named as defendants were R. F. Guillen, and Robert F. Zahradnick, Warden of the State Penitentiary. On motion of the plaintiff, Messrs. Guillen and Zahradnick were dismissed with prejudice.

The facts reveal that in October, 1976 the Department of Corrections (hereinafter "Department") advertised for candidates to fill the then vacant position of Assistant Superintendent of Security (hereinafter "position") at the state maximum security penitentiary. The application deadline was advertised as November 8, 1976. Plaintiff and three males submitted timely applications to the personnel department, as was customary in such situations. Among these applicants, plaintiff was, according to the testimony introduced, the most qualified.[1] The position which plaintiff sought would have been, as to her, a lateral transfer, at least from a monetary standpoint.

Soon after the application period had closed, a personnel officer informed defendant Digges, who would oversee the selection process, of the names and basic qualifications of each applicant. Digges testified that he was dissatisfied with the "quality and quantity" of the applicants. Accordingly, during the next few days, Digges spoke with Landon about the possibility of encouraging other candidates to apply. Landon, who had final responsibility for hiring, contacted L. K. Hardy, a male, who was superintendent of a medium security field unit, and a personal friend, to encourage him to apply for the vacant position, telling him, "I think you have lots of potential and so do others." The evidence reflects that Landon also discussed Hardy's qualifications with defendants Digges, Davis and Robinson. Robinson, who had known Hardy professionally and socially for some fifteen years, spoke with him several times, encouraging him to seek the security position. Each of these conversations occurred during the week subsequent to close of the initial application period.

On November 17, Hardy submitted his application directly to Digges. On November 24, at Digges' direction, the position was readvertised,[2] and the deadline for applications was extended to December 1. No other applications were received.

On December 6, Digges appointed Robinson, defendant Cox, and a third male, R. F. Guillen, to the Employee Selection Board.

---

1. See the Employee Selection Board rankings of plaintiff and these three males *infra*, at page 450.

2. Digges testified that he decided to readvertise the position "sometime during the week of November 8." Though this would be prior to Hardy's submission of his formal application, there is no evidence that it was prior to Digges' first conversation with Hardy, Landon or Robinson, concerning the possibility of Hardy's filing an application.

This Board was to interview each applicant and recommend to Digges the top two candidates for final consideration.

The Board conducted the interviews on December 9, each member rating the candi-

dates in five categories—background, mental qualities, physical characteristics, capacity and composite personality—on a ten point scale. The members' total ratings of the candidates were:

| | Hardy | Plaintiff | Male #1 | Male #2 | Male #3 |
|---|---|---|---|---|---|
| Cox: | 43 | 40 | 42 | 41 | 39 |
| Guillen: | 40 | 41 | 40 | 35 | 38 |
| Robinson: | 44 | 42 | 38 | 36 | 35 |
| TOTAL: | 127 | 123 | 120 | 112 | 112 |

Based on these relative rankings, the Board voted to recommend Hardy and plaintiff, and sent its decision, along with its rating forms, to Digges.

On that same date, Digges reviewed the Board's ratings of the two top candidates; selected Hardy for the position; discussed his recommendation with Landon, who concurred; and wrote to the Warden of the penitentiary confirming Hardy's appointment.

■ Two preliminary points merit brief discussion. First, plaintiff contends that defendants purposely conspired to deprive her of the Assistant Superintendent for Security position and manipulated the selection process so as to obscure their discriminatory actions. The Court does not accept this characterization of defendants' motives. Nevertheless, proof of the employers' discriminatory intent is not necessary to establish a cause of action under Title VII. *Griggs v. Duke Power Company,* 401 U.S. 424, 423, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Alexander v. Gardner-Denver Co.,* 519 F.2d 503 (10th Cir. 1975); *Rogers v. International Paper Co.,* 510 F.2d 1340 (8th Cir. 1975); *Robinson v. Lorillard Corp.,* 444 F.2d 791 (4th Cir. 1971). Discriminatory impact alone establishes liability.

■ Second, the Court fully accepts defendants' conclusion that Mr. Hardy was better qualified than plaintiff to fill the

Assistant Superintendent for Security position. However, this finding does not dispose of plaintiff's claim. Plaintiff need not prove that she was the most qualified applicant to make out a charge of illegal sex discrimination under Title VII. *Gillin v. Federal Paperboard Company,* 479 F.2d 97 (2d Cir. 1973); *Hatcher v. Bailer,* C.A. 75–0671–R (E.D.Va. Sept. 23, 1976). Plaintiff need only prove that, wholly or partially, because of her gender, her application was not given the full consideration it warranted. *Harvard v. Bushberg,* 137 N.J.Super. 537, 350 A.2d 65, 67 (1975); *Gillin v. Federal Paperboard Company, supra.*

■ The evidence in this case establishes to a preponderance that plaintiff's gender was a factor adversely affecting the Department's consideration of her application. Active discrimination may be, and usually must be, proven by circumstantial evidence. While no one fact standing alone manifests sexual discrimination against plaintiff in the instant case, all the facts and circumstances taken together preponderate toward this conclusion.[3]

Specifically, the Court finds four crucial points in the employee selection process at which sexual discrimination influenced the Department's actions.

1. Defendants Digges and Landon "preselected" a party to fill the vacant security position in contravention of departmental personnel guidelines.[4] While Landon and

---

**3.** In an individual discrimination suit, plaintiff's evidence of a pattern and practice of discrimination is probative in determining the reasons for the employer's actions in a particular situation. *King v. Yellow Freight System, Inc.,* 523 F.2d 879 (8th Cir. 1975). The evidence the instant plaintiff produced of past and present

discrimination against women by the Department of Corrections is a factor this Court has weighed in reaching its decision.

**4.** Departmental regulations require a minimum of three, and preferably five, qualified applicants for each position before said position can

Digges concluded to solicit Hardy's application in good faith, believing him to be better qualified than each of the previous applicants, they thus prejudged when their duties required neutrality. The evidence of pre-selection is cumulative. Digges discussed Hardy with Landon prior to Hardy's applying for the position, but after the application deadline had passed. Landon personally solicited Hardy's application.

Both Digges and Landon were personal friends of Hardy. Hardy applied directly to Digges, while all other candidates applied to the personnel department, pursuant to the advertisement. Digges appointed Robinson, who was aware of Landon's efforts to convince Hardy to apply for the position, to the Board responsible for screening applicants. Finally, although Digges testified that he ordered readvertisement of the position because he wanted at least 10–12 candidates, no evidence was adduced that, during the two weeks after Hardy submitted his application but prior to the second deadline, any effort was made to encourage other qualified persons to apply.

While this pre-selection adversely affected each of the initial applicants, the Court concludes that the defendants' decision to reopen the application period and solicit Hardy's application was based, in part, on consideration of plaintiff's gender so as to constitute unlawful sex discrimination under Title VII. As the Employee Selection Board ratings show, plaintiff was the most qualified of the initial applicants. She had corrections experience greater than or similar to that possessed by the two previous Assistant Superintendents of Security, each of whom was male. This Court concludes that, had plaintiff been male, defendants would have given greater consideration to her application at the time of their decision to readvertise the position and solicit Hardy's application. This conclusion is bolstered by the general sexist attitude which the evidence discloses pervades the Department of Corrections.[5]

2. The Board ratings and recommendations were influenced by plaintiff's gender as well. This Court rejects as totally incredible the contention that the Board never discussed or even considered the subject of plaintiff's sex in relation to her application. According to Mr. Landon, it is unprecedented for a woman to hold the position of Chief of Security in any maximum security prison in this country.[6] It is beyond this Court's comprehension that defendants are so sex-blind as to have been as oblivious to the gender of this applicant as they contend. Indeed, the evidence reflects that plaintiff herself raised the subject of her sex in the interview, expressing the hope that the Board would not let the fact of her being female detract from her application. Her statement, made in prison jar-

be filled. Defendants admit that plaintiff and at least two of the initial male applicants were qualified to be Assistant Superintendent of Security.

5. The unrefuted testimony of Sgt. Johnson regarding statements made by Major Reynolds and Cpt. Dunn evidences a sexist attitude at least at the lower echelon of the corrections system. Further, Sgt. Johnson's testimony that the few women guards and officers are given considerably less responsibility than their male counterparts demonstrates that such attitudes are prevalent among higher management personnel as well. See also, Landon's testimony, infra n.6.

6. The following questions and answers were adduced at trial:
Mr. Massey (Defendants' Counsel):
Would you have any reason to keep . . . or not want a woman in the position of Assistant Superintendent of Security if you had one as Assistant Superintendent of Treatment?
Mr. Landon:
I would say this: I would rather have you ask me another question.
The Court:
Well, it was coming, if not from him, from me.
Mr. Landon:
Right, Sir. I don't know. In answering the question, I don't know, because it didn't come up in this case. I didn't have to search my conscience because Mr. Hardy was selected. But now that you have asked me the question, I really don't know. I am not familiar with women being Chief of Security of penitentiaries anywhere in the United States. I have never seen one. I have never heard of one being appointed to that level. So to answer your question, Mr. Massey, it hasn't happened, and I don't know.

gon, must have provoked some reaction. Indeed, defendant Cox testified that he had at one point commented on that subject as well. Whatever the specific wording and intent of Cox's remark,[7] it was one which reasonable men would find difficulty in not recalling. Despite this, both Robinson and Guillen contend they recall no such statement. Distasteful as it is to say, the Court is bound to pronounce its doubt of the credibility of this aspect of their testimony. Indeed, the striking lack of recall casts doubt on their entire account of the Board's deliberative process.

The Court finds that the Board's composite ranking of plaintiff was adversely affected by her gender. Specifically, at least Cox's ratings unlawfully reflected a sexist attitude. Cox ranked plaintiff fourth of five candidates, while Guillen ranked her first and Robinson placed her second. Indeed, the evidence reflects that Cox rated plaintiff inferior to all four males in the categories of "physical characteristics" and "capacity" and no legitimate non-discriminatory reason for these ratings has been demonstrated.[8]

The fact that the Board recommended both plaintiff and Hardy to Digges for final consideration does not cure these apparent defects in the ratings. As discussed below, both Digges and Landon testified that they considered the candidates' total scores in choosing between Hardy and plaintiff. The discrimination evidenced in the rankings thus establishes a violation of Title VII.

3. Digges testified that his decision to select Hardy rather than plaintiff was premised in part on the Board's relative ranking of the two candidates. Since these rankings were themselves influenced by considerations of gender, they are in the Court's view an impermissible criterion.

Additionally, the Court is satisfied that Digges gave virtually no consideration to plaintiff's application at this vital stage of the selection process, when it was his duty fully to consider each of the candidates recommended by the Employee Selection Board. The decision to recommend Hardy was made much earlier, whether consciously or not, when Digges directed readvertisement of the position. This pre-selection, based in part on impermissible sexual stereotypes, precluded plaintiff from receiving a full, unbiased consideration to which she is entitled under the law.[9]

4. Landon testified that his decision to appoint Hardy was based primarily on Digges' recommendation and on the Board's rankings of the candidates.[10] Since each of these bases for the ultimate decision was partially premised on unlawful considerations of gender, Landon's decision is similarly tainted.

Having concluded that the selection of Mr. Hardy was based in part on factors related to plaintiff's gender in violation of Title VII, the Court must now fashion appropriate relief.

 The plaintiff contends that she is entitled to be placed in Hardy's position. The Court however concludes otherwise. Hardy was, absent all considerations of gender, a superior candidate.[11] The De-

---

**7.** Plaintiff testified that Cox asked her, "Do you think that you don't need a penis to do this job?" Cox testified that he quoted Gloria Steinem to the effect that "I've seen thousands of job descriptions, and I've never seen one yet that required a penis," intending to support plaintiff's application.

**8.** The rating form states, "Physical characteristics: General Bearing; Attire; Grooming; Poise; Voice; Speech; and Overall Manner." "Capacity: Is the candidate well equipped to perform the work proposed, to learn and to show potential growth? Do strength of charac-

ter, capabilities and initiative impel the candidate toward advancement?"

**9.** This conclusion of pre-selection is bolstered by the extremely short time interval between the Board's transmitting its two recommendations to Digges and Digges' letter to the Warden confirming Hardy's appointment.

**10.** Landon's testimony quoted *supra* at note 6 gives rise to the conclusion that he exercised no independent judgment in the selection process.

**11.** The record reflects that Hardy had comprehensive experience in security, including more

partment of Corrections thus had a valid, nondiscriminatory basis for its selection which, considered alone, would lead it to choose Hardy if indeed the process were redone. *See King v. Laborer's Int'l Union,* 443 F.2d 273, 278–79 (6th Cir. 1971). Title VII does not contemplate "bumping" an innocent beneficiary of unlawful discrimination in favor of a less qualified victim of discrimination.

The evidence fails to disclose any specific acts or omissions on the part of the defendants Governor Godwin, Secretary Smith, former Director Davis or defendant Hutto, who upon Mr. Davis' resignation became Director, in relation to the process by which Mr. Hardy was selected. Plaintiff's contention that actions on the part of the Governor evidence knowledge by him of discrimination in the selection process must fail.

The evidence does disclose an effort on the part of the Governor, through a third party, to endeavor to induce plaintiff to forego the instant litigation. The Court fails to perceive any improper or inappropriate motive in this regard. There is no evidence which would give rise to any inference that the Governor, Secretary Smith, Director Davis ·or Assistant Director Hutto had knowledge of the details surrounding the circumstances of Mr. Hardy's selection. As there is no need to continue these defendants as parties to this case for purposes of relief, each of them shall be dismissed as a defendant.

As heretofore indicated, plaintiff seeks a declaration as to her rights and injunctive relief so as to preclude any future sexual discrimination as to her personally, and as to this she is so entitled.[12]

An appropriate decree will follow.

---

than a decade as Field Unit Superintendent. Plaintiff's expertise lay primarily in treatment, her education and experience being concentrated mostly in rehabilitation. While this Court does not suggest that treatment techniques are not useful in maintaining institutional security, it cannot substitute its judgment for that of competent corrections officers that Hardy's qualifications are superior to plaintiff's for the position of Assistant Superintendent of Security. Plaintiff contends that the Department should not be permitted to consider Hardy's experience as guard and field unit superintendent, because no woman could have obtained such experience with the Department prior to the last few years. Plaintiff loses sight of the fact that this is not a class action. No evidence was adduced to the effect that plaintiff herself ever applied for, or was barred from, such employ-

ment. Nor did plaintiff contend that she ever considered applying for such positions but was deterred by the Department's sexually discriminatory policies. Absent such proof, plaintiff cannot contend that the use of Hardy's experience as a criterion of comparison unlawfully perpetuates the effects of past discrimination. See *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 366–372, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

12. Plaintiff is not entitled to any monetary damages. She has suffered no loss of wages as a result of defendants' actions. Plaintiff's amended complaint, which seeks punitive damages and compensation for alleged mental distress, was never properly filed with the Court. Accordingly, the Court need not address the issues raised therein.