Harold ST. CLAIR, Plaintiff-Appellee,

v.

**LOCAL UNION NO. 515 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant-Appellant.**

**No. 19215.**

United States Court of Appeals
Sixth Circuit.

Dec. 30, 1969.

S. Del Fuston, Chattanooga, Tenn., for defendant-appellant.

Robert A. Frazier, Chattanooga, Tenn., for plaintiff-appellee.

Before EDWARDS, McCREE, and COMBS, Circuit Judges.

McCREE, Circuit Judge.

Teamsters Local 515 appeals from a jury verdict for Harold St. Clair, one of its members, in an action charging unfair representation. The jury found that the union had unfairly represented plaintiff after his dismissal from a job and awarded him $5,000 as damages. In response to the written questions submitted by the District Judge, the jury also found that the union had not, as St. Clair claimed, caused or procured his dismissal in violation of Tenn. Code Ann. § 47–15–113. Plaintiff does not challenge this finding on appeal.

The union claims that the District Judge committed error in refusing to grant a directed verdict, in making certain evidentiary rulings, and in instructing on the measure of damages. We agree with the second and third of appellant's contentions and accordingly reverse and remand the case to the District Court for a new trial.

The facts, as nearly as can be determined,[1] are these. St. Clair was employed by the Fuller Construction Company on a project in Scottsboro, Alabama, from August 4 until some time in September, 1966. On Monday, September 19, plaintiff did not come to work because he claimed he was sick. He attempted to notify the company, but apparently succeeded in reaching only a subordinate who did not pass his message along. Local 515's assistant business agent, Sanders, discovered that

---

1. There were many factual conflicts in the testimony. We are of course bound by the jury's verdicts and must accept as true that testimony which supports them best. The first of these verdicts, that the union did not cause or procure St. Clair's dismissal, poses little difficulty in this regard. But the second, that the union unfairly represented St. Clair, does, for it rests on the jury's notion of fairness as well as on its resolutions of factual conflicts in the testimony. And of course this verdict does not bind us insofar as it is conceivably the result of any errors in rulings on admissibility or in instructions to the jury.

Fuller had placed another driver in St. Clair's job and immediately called St. Clair. After this conversation, Sanders telephoned one of Fuller's superintendents. Despite Sanders' arguments that St. Clair was entitled to miss work because of illness, the company's representative apparently replied that St. Clair was fired "because he didn't show up for work, he was an agitator and a troublemaker." After this conversation, Sanders telephoned the company twice and St. Clair four times in an effort to save St. Clair's job. There was no arbitration provision in the union's contract, and the only means the union could employ to obtain St. Clair's reinstatement were oral representations and, if these failed, a strike.

Two or three days after his dismissal, St. Clair received from the company a check and a termination slip noting that he had "quit".[2] He attempted to bring the matter up again with Sanders, but the latter pleaded lack of time and referred him to Local 515's president, Hicks, who apparently did nothing. Within a few days the union had obtained another job at somewhat lower pay for St. Clair. This employment lasted for about a month, after which plaintiff drew unemployment compensation until February 16, 1967, when he became a deputy sheriff. The union claims that between October and February it referred him to other jobs, but St. Clair claims that he was not able to find work during that time.

## I

Appellant argues that the District Court should have directed a verdict in its favor on the issue of fair representation. We do not agree, because we believe that there was evidence from which a jury could have found unfair representation under applicable standards of law.

The phrase "fair representation" is something of a term of art, and the standards by which we are bound have not been set down explicitly in a code. However, the Supreme Court has spoken clearly enough to guide us here. See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The Court there held that the duty of fair representation does not require a union to exhaust every theoretically available procedure simply on the demand of a union member. 386 U.S. at 192, 87 S.Ct. at 903; see also Acuff v. United Papermakers and Paperworkers, 404 F.2d 169 (5th Cir. 1968). As one court has said, "[t]he union is permitted to exercise its discretion in prosecuting grievances." Watson v. International Brotherhood of Teamsters, 399 F.2d 875, 880 (5th Cir. 1968). However, the ignoring or the perfunctory processing of a grievance may violate the duty of fair representation. Vaca v. Sipes, 386 U.S. at 194, 87 S.Ct. at 903. The decisive question is whether the union's conduct is "arbitrary, discriminatory, or in bad faith." 386 U.S. at 190, 87 S.Ct. at 916; Brady v. Trans World Airlines, Inc., 401 F.2d 87, 104 (3d Cir. 1968).

Here, there are facts from which a jury could so find. Union agents might have protested more vigorously; they might have threatened a strike, and they might even have urged the Local's members to walk off the Scottsboro project.

2. The wording of the termination slip is of no relevance at this stage of the controversy. It is relevant only to the plaintiff's theory that the union caused or procured his discharge. This theory apparently rested on the following interpretation of the facts: Sanders, not the company, told St. Clair he was fired; the company, as evidenced by the wording of the termination slip, thought St. Clair had quit; therefore, Sanders had never been told by the company that St. Clair was fired, but had himself made the decision, and had told the company that St. Clair had quit voluntarily.

The evidence might have supported such a version, but we are foreclosed from considering it, because the jury rejected it, and the appellee does not question that rejection on appeal. Since none of the evidence which was excluded at trial, but which, we rule, must be admissible at the new trial, adds any strength to this theory, the jury's verdict on this contention cannot be disturbed.

Sanders' refusal to contact the company again after St. Clair received his termination slip might have constituted bad faith. Sanders' referral of St. Clair to Hicks and Hicks' inaction might also support such a charge, since there was a local election campaign in progress in which St. Clair was vocally opposing the incumbents, including Hicks (who subsequently lost). In considering the issue of good faith representation, the jury must of course consider the union's duty to represent all its members. It might conclude that the union was acting in good faith in refusing to strike and thereby jeopardizing many members' livelihoods over a grievance which either it or the employer in good faith considered frivolous. Although we think that the evidence of bad faith is minimal, there is enough to present a jury question.

## II

Despite the adequacy of evidence to present a jury question on the issue of fair representation, there were several reversibly erroneous evidentiary rulings which taint the verdict.

█ (1) *Hearsay.* The District Court excluded as hearsay Sanders' testimony about what the company's representatives said to him in telephone conversations about St. Clair. Perhaps the Court's ruling might be defended on the theory that the testimony was offered to prove the truth of what the company representative asserted, *i. e.*, that the company and not the union was responsible for the firing of St. Clair, although the evidence came in later anyway in response to questions by both counsel and the District Judge. But the proffered evidence was clearly relevant and admissible on the issue of good faith representation, and should have been admitted on that issue, with a proper instruction, if needed. It is unnecessary to decide whether the error was prejudicial because on retrial, the issue of responsibility for the firing will not be presented in the case, and the evidence will have to be admitted.

█ The District Court also allowed into evidence plaintiff's statement that Wiley, another Local 515 member, had told him that Sanders had told Wiley that St. Clair was a troublemaker. This was clearly hearsay and should not have been admitted.

█ (2) *The Union Trial.* Some time after the Local's election, St. Clair brought charges against Sanders, and the new majority of Local 515's executive board (which St. Clair had supported) removed Sanders from his position as assistant business agent. This action was reversed by a Teamsters appeal board. ·The District Court quite properly instructed the jury that they were not bound by the executive board's verdict, but admitted testimony by members of the executive board of statements made by Sanders during the Local proceedings. We believe that these rulings were correct, as far as they went, because the evidence at the union trial may have been relevant to the inquiry with which the Court was concerned, and to the extent that Sanders' statements were vicarious admissions of the union, they were competent. Of course, at the new trial, the District Court will again exclude reference to the union trial verdict and will instruct that the fact that charges were filed against Sanders is not evidence of unfair representation.

█ (3) *St. Clair's Past Job History.* The District Court excluded evidence of St. Clair's past job history. It appears that as a member of Local 515 he had held many jobs and had been fired for many reasons including driving a company truck while intoxicated, dishonesty and destroying company property, and, as a foreman, for refusing to carry out the direct order of a general superintendent. The District Judge held that the only evidence admissible was that pertaining to St. Clair's conduct on the Fuller Scottsboro project. We believe that this ruling unduly limited proper inquiry. The relevant issue here is not whether the union acted incorrectly, but whether it acted in bad faith. Vaca v. Sipes, 386 U.S. 171, 192–194, 87 S.Ct.

903, 17 L.Ed.2d 842 (1967). In determining bad faith, the jury must look through the eyes of the union and see whether there appeared to be reasons upon which the union in good faith relied not to prosecute St. Clair's grievance to the fullest extent. Here the evidence of St. Clair's past job history, and the problems it might create in making the excuse for his absence creditable or in making him appear worthy of reinstatement, certainly tends to prove the union's claim that it acted in good faith in protesting twice to the company and, when that failed, in obtaining another job for plaintiff instead of striking and depriving a substantial number of its members of their jobs.

### III

■■■■ Although the union found other employment, albeit at slightly lower wages, for plaintiff a few days after his discharge, the jury awarded him $5,000 in damages. Presumably this award included damages not only for loss of income, but also for "humiliation and embarrassment in the eyes of his wife and children, and the loss of his home to a mortgage holder", elements which the District Court instructed the jurors they could consider. Although appellant made no objection to this instruction, we believe that giving it was plain error, and that the damages awarded cannot stand.

Generally in contract law consequential damages will not be awarded unless the consequences were clearly contemplated by the parties as being at the heart of the contract.[3] Accordingly, the usual monetary measure of damages for wrongful discharge at common law,[4] under the National Labor Relations Act,[5] at arbitration,[6] and under the Equal Employment Opportunity Act,[7] is back pay less interim earnings.

Here the union is certainly liable for nothing more,[8] and perhaps for less. As the jury found, the union did not procure plaintiff's discharge. It was the decision of the employer (although the District Court seems not to have decided whether the company's act was wrongful). As the Supreme Court said,

[D]amages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.

Vaca v. Sipes, 386 U.S. 171, 197–198, 87 S.Ct. 903, 920, 17 L.Ed.2d 842 (1967). The calculation of who caused which damages may present serious practical problems, but the Supreme Court has strongly implied that in cases like this, involving a discharge and an alleged failure by the union to take all available steps to remedy the employee's complaint, the increment of damages caused by the union's breach of duty is virtually *de minimis*. "[A]ll or almost all of Owens' [the employee's] damages would still be attributable to his allegedly wrongful discharge by Swift [the company]." Vaca v. Sipes, 386 U.S. at 198, 87 S.Ct. at 921. Furthermore, if the company did not act wrongfully in firing St. Clair, then clearly the union owes him no damages, since even if its duty had been fully discharged, St. Clair would not have retained his job.

---

3. *See, e. g.,* Hadley v. Baxendale, 9 Exch. 341 (1854); 5 A. Corbin, Contracts, § 1007 (1964).

4. *See* Dukes v. Brotherhood of Painters, 191 Tenn. 495, 235 S.W.2d 7, 10, 26 A.L. R.2d 1223 (1950).

5. *See, e. g.,* Miranda Fuel Co., 140 N.L. R.B. 131, enforcement denied on other grounds, 326 F.2d 172 (2d Cir. 1963).

6. *See, e. g.,* United Steelworkers of America v. Enterprise Wheel & Car Co., 363

U.S. 593, 595, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

7. § 706(g), 42 U.S.C. § 2000e–5(g) (back pay optional; must be reduced by "[i]nterim earnings or amounts earnable with reasonable diligence").

8. The issue of the length of the period over which plaintiff might be entitled to back pay less interim wages need not be decided on this appeal, and we offer no opinion on it.

If plaintiff wishes to recover damages from Fuller Construction, he may join the company as a party defendant. Vaca v. Sipes, 386 U.S. at 197, 87 S.Ct. at 903; *see also* Brady v. Trans World Airlines, Inc., 401 F.2d 87, 94–95 (3d Cir. 1968); Kress v. Local No. 776, International Brotherhood of Teamsters, 42 F.R.D. 643, 647 (M.D.Pa.1967) (employer an indispensable party).

The judgment is reversed and remanded to the District Court for proceedings not inconsistent with this opinion.