**Butrice A. HINES et al., Plaintiffs-Appellants,**

v.

**LOCAL UNION NO. 377, CHAUFFEURS, TEAMSTERS, WAREHOUSEMEN & HELPERS, et al., Defendants-Appellees.**

**No. 73-2105.**

United States Court of Appeals, Sixth Circuit.

Nov. 22, 1974.

1154

Niki Z. Schwartz, Gold, Rotatori, Messerman & Hanna, Cleveland, Ohio, for plaintiffs-appellants.

Eugene Green, Youngstown, Ohio, Robert C. Knee, Jr., Dayton, Ohio, Bernard S. Goldfarb, Alan M. Rauss, Cleveland, Ohio, David Leo Uelmen, Milwaukee, Wis., for defendants-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and McCREE, Circuit Judges.

McCREE, J., delivered the opinion of the Court, in which PHILLIPS, C. J., joined. EDWARDS, J., (p. 1158) filed a separate opinion concurring in part and dissenting in part.

McCREE, Circuit Judge.

This is an appeal from the grant of a motion for summary judgment in favor of defendants in an action by eight truck drivers for damages caused by their wrongful discharge by their employer and by the breach of the duty of fair representation on the part of their union. The primary question we consider is whether summary judgment in favor of defendant local union was proper in light of plaintiffs' allegation, assumed to be true, that because of political animosity, local union officials proc-

essed their grievance in a perfunctory manner. We decide that summary judgment should not have been entered for the local union and that plaintiffs should have been permitted to submit proofs in support of the allegations of bad faith and perfunctory treatment.

The case was filed by discharged employees on June 30, 1969, approximately two years after their discharge had been upheld by the arbitration committee designated in the contract to hear employees' grievances. On October 31, 1972, the district judge denied defendant Anchor Motor Freight's motion for summary judgment, finding "substantial issues as to material facts." On May 31, 1973, Anchor filed another motion for summary judgment in which the unions joined. After reviewing the depositions and briefs submitted by the parties, the district court entered summary judgment in favor of all defendants. This appeal followed.

The facts considered relevant by the district court are as follows:

Plaintiffs were discharged from their employment with Anchor Motor Freight on the 27th day of July, 1967, for alleged dishonesty; said dishonesty consisting of the falsifying of motel receipts. The discharges of all of the plaintiffs were processed through the grievance procedure as provided for by a contract between the local union and the company, known as the National Master Automobile Transporters Agreement and Central Conference Area Supplemental Agreement covering truckaway, driveaway and local agreements. Plaintiffs asserted their innocence to the charges. The tangible evidence that was used against plaintiffs in the grievance procedure consisted of receipts showing that amounts paid were in excess of amounts shown paid on the comparable motel registration cards; company logs and expense summaries; a notarized statement of motel clerk, Anthony Pagano, swearing to the accuracy of the amounts shown on the registration cards; and the notarized statements of motel owner, Joseph Repicci, swearing to the accuracy of the accounts shown on the registration cards and to the fact that inflated receipts were given to plaintiffs.

Plaintiffs carried their grievance to the Union, and the Union representative, one Mr. John Angelo. They assert that they told Mr. Angelo that the motel operator was at fault and that Mr. Angelo's response was that "there was nothing to worry about." In July of 1967, there was a meeting of the Central Conference Joint Arbitration Committee, at which time all plaintiffs were given an opportunity to present their evidence and make their arguments as to their side of the case. At that meeting local union representatives spoke on behalf of the drivers. However, the final decision of the Committee was that the discharge of the drivers was upheld.

Plaintiffs then retained an attorney who went to the motel in New York, obtained a statement from the owner of the motel, Mr. Repicci, indicating that he had no personal knowledge of the transactions in question, that the clerk had handled such transactions, and that the discrepancies between the receipts and registration cards could possibly be attributable to the clerk recording less than was actually paid. With this new information plaintiffs returned to Detroit in October of 1967, seeking a rehearing based on new evidence. However, said requests were unanimously denied on the ground that there was no new evidence justifying the reopening, and that the motel owner's statement was never considered on the merits of the discharge.

Under Rule 56(c) of the Federal Rules of Civil Procedure, the burden is on the party seeking summary judgment to establish that there is no genuine issue as to any material fact. In addition, the inferences to be drawn from the af-

fidavits, exhibits and depositions filed in connection with the motion must be viewed in the light most favorable to the party opposing the motion. United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

Accordingly, we consider, as did the district court, the matters before it from which bad faith or arbitrary conduct of the local union could be inferred. They consist of the motel clerk's admission, made a year after the discharge was upheld in arbitration, that he, not plaintiffs, pocketed the money; the claim of the union's failure to investigate the motel clerk's original story implicating plaintiffs despite their requests; the account of the union officials' assurances to plaintiffs that "they had nothing to worry about" and "that there was no need for them to investigate;" the contention that no exculpatory evidence was presented at the hearing; and the assertion that there existed political antagonism between local union officials and plaintiffs because of a wildcat strike led by some of the plaintiffs and a dispute over the appointment of a steward, resulting in denunciation of plaintiffs as "hillbillies" by Angelo, the union president.

After considering all material submitted with the motion for summary judgment, the district court held that under Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), no breach of the duty of fair representation was shown.

■ A union breaches its duty of fair representation when it acts arbitrarily, discriminatorily or in bad faith. Vaca v. Sipes, 386 U.S. at 190, 87 S.Ct. 903; Humphrey v. Moore, 375 U.S. 335, 350, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Johnson v. General Drivers, Warehousemen & Helpers, Local 89, 488 F.2d 250, 251 (6th Cir. 1973); Dill v. Greyhound Corp., 435 F.2d 231, 238 (6th Cir.), cert denied, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122

(1970). For example, it "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." 386 U.S. at 191, 87 S.Ct. at 917. In *Vaca*, the plaintiff was dismissed from his job because of poor health. He contested the dismissal and the union initiated a grievance. However, upon receipt of an unfavorable medical report it dropped the grievance at the fourth step just prior to arbitration and urged the employee to accept a company offer to refer him to a rehabilitation center. The employee refused the offer and filed suit against the union. The Supreme Court determined that the union did not breach its duty of fair representation because it attempted to obtain medical evidence in support of the employee's case and tried to secure less vigorous work or rehabilitative treatment for him. There was no evidence of personal hostility by any union official toward the grievant.

Although this appeal does not concern a union decision to short circuit the processing of a grievance, the facts assumed as true by the district court were that the union made no attempt to obtain evidence favorable to the employes and that some of its officials were hostile towards them.

■ Appellants contend that had the local union investigated the motel clerk, Pagano, as requested, it would have discovered that he had pocketed the money and that appellants were innocent of any wrongdoing. The failure to investigate, by itself, is insufficient to fix liability on the union since "proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation." Dill v. Greyhound Corp., 435 F.2d at 238, *quoting* Bazarte v. United Transp. Union, 429 F.2d 868, 872 (3d Cir. 1970). In *Dill*, we reversed the trial court's finding of a breach of the duty of fair representation because, although the union failed to proceed to arbitration, there was no proof that its decision was the result of hostility or mal-

ice, nor was there any evidence that it acted in bad faith in settling the grievance.

In this appeal, there are allegations of bad faith and the assertion of a reason for it, and the district court's ruling that "plaintiffs have failed to reveal even a threshold issue of bad faith" should not have been made without affording them the opportunity to prove this contention.

Appellants have met the requirement that supporting affidavits

> alleging the breach of a Union's duty of fair representation must contain more than "conclusory statements alleging discrimination. In particular plaintiffs must make a showing that the action or inaction of the statutory representative complained of was motivated by bad faith, for the gravamen of the rule is 'hostile discrimination'." Gainey v. Brotherhood of Railway Employees, 313 F.2d 318, 323 (C.A. 3). "[C]onclusory words * * * without a concomitant showing of lack of good faith [does] not set forth a claim."

Balowski v. International Union, United A., A. & A. Imp. Workers, 372 F.2d 829, 835 (6th Cir. 1967), *quoting* Hardcastle v. Western Greyhound Lines, 303 F.2d 182, 186 (C.A. 9) cert. denied, 371 U.S. 920, 83 S.Ct. 288, 9 L.Ed.2d 229 (1962).

■ A case where questions of good faith or fraud are at issue should not be summarily decided without the taking of testimony unless it is clear that recovery cannot be had on any state of the evidence. Williamson v. Wilbur-Rogers, Inc., 381 F.2d 719, 721 (6th Cir. 1967); S. J. Groves & Sons Co. v. Ohio Turnpike, 315 F.2d 235, 238–239 (6th Cir. 1963).

In St. Clair v. Local Union No. 515, 422 F.2d 128 (6th Cir. 1969), we upheld a jury verdict for an employee against his union in a fair representation case where the local contended that a directed verdict should have been granted. Although "the evidence of bad faith [was] minimal, there [was] enough to present a jury question" (422 F.2d at 131) that the union should have protested more vigorously, that it should have urged its members to walk off the job in protest, or that a union official declined to act because of hostility towards the employees. Accordingly, we determine that the district court erred in granting summary judgment in favor of the local union.

Although we hold that defendant local union's motion for summary judgment was improperly granted, we determine that the district court did not err in granting the motions made by the International Union and by the employer.

■ There was no claim that the local union was acting for or at the direction of the International, and appellant Hines, when asked on deposition what steps the International failed to take in investigating the company's charge replied: "I don't know of any steps that they should or should not have taken." Since there was no genuine issue as to a material fact about the conduct of the International Union, the grant of summary judgment was proper.

Appellant contends that the employer did not have "just cause" to discharge them because of the recantation of the motel clerk. As we said in Balowski v. International Union, *supra*, 372 F.2d at 833,

> [i]t is apparent that what plaintiff is attempting to do is to relitigate his grievance in this proceeding. This he cannot do when the collective bargaining agreement provides for final and binding arbitration of all disputes, absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose, or such gross mistake or inaction as to imply bad faith on the part of the Union or the employer. Cf. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246.

■ No evidence of any misconduct on the part of the employer to avoid the arbitration award is suggested. Although appellants argue that there was a

**1158**

conspiracy between the union and the company, none of the evidence [1] offered to substantiate this claim is sufficient under the requirement of *Balowski, supra,* that something more than suspicion be shown. Accordingly, we hold that the district court correctly granted summary judgment in favor of Anchor Motor Freight. *See* United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1959); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1959); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1959).

Summary judgment in favor of Anchor Motor Freight and the International Union is affirmed.

Reversed and remanded to vacate the judgment in favor of the local union and for further proceedings consistent with this opinion.

EDWARDS, Circuit Judge (concurring in part and dissenting in part.)

I agree with the majority opinion in affirming the judgment of the District Court in dismissal of the case as to the International Union. I also agree with the majority opinion in reversing for hearing as to plaintiffs' allegations concerning the Local Union.

I think, however, that similar issues of fact were presented by the pleadings concerning plaintiffs' charges against the employer which should not have been dealt with on summary judgment, and as a consequence, as to the employer the case should likewise be reversed and remanded for hearing.

1. The "facts" plaintiffs rely upon to show that both the union and company were working together to discharge the drivers are as follows:

(1) That a company manager loaned a company car to Angelo, the local President, and arranged a personal automobile purchase for him in Michigan.

(2) That the company gave jobs to two relatives of Schwartz, another union official.

(3) That the company had tried to fire one of the appellants before.

(4) That 25 of the 57 Norwood drivers hired by Lordstown had either been terminated or quit by the end of 1967.