William G. WHITTEN,
Plaintiff-Appellant,

v.

ANCHOR MOTOR FREIGHT, INC.,
and Local 377, Teamsters' Union,
Defendants-Appellees.

No. 74–1815.

United States Court of Appeals,
Sixth Circuit.

Aug. 27, 1975.

Paul H. Tobias, Goldman, Cole & Putnick, Cincinnati, Ohio, for plaintiff-appellant.

Bernard S. Goldfarb, Alan M. Rauss, Cleveland, Ohio, Eugene Green, Youngstown, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

William Whitten, a truck driver with 13 years seniority, was discharged by defendant Anchor Motor Freight, Inc., because of an accident on July 21, 1966, when the automobile-carrying truck he was driving hit a bridge which was too low for the height of his load. In consequence, two of the General Motors automobiles which Whitten was hauling were damaged. After his discharge, Whitten brought suit in the district court pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[1] against Anchor for wrongful discharge in breach of its contract and against Teamsters' Local Union 377 for breach of its duty of fair representation in refusing to process the grievance and to obtain an arbitration hearing.

This case was tried for two weeks to a jury, but at the conclusion of all proofs, District Judge Leroy Contie directed a verdict in favor of both defendants. As to Whitten's claim of wrongful discharge, Judge Contie ruled that the undisputed evidence showed that the accident was a "major chargeable" one within the unambiguous language of the con-

[1] 29 U.S.C. § 185 provides:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments**

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

**Jurisdiction**

(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

**Service of process**

(d) The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

**Determination of questions of agency**

(e) For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling. June 23, 1947, c. 120, Title III, § 301, 61 Stat. 156.

tract, and that it further showed there had been a "full investigation" of the accident. Therefore, Judge Contie ruled, Anchor had an absolute right under the contract to discharge Whitten and his cause of action must fail.

As to Whitten's claim of breach by the defendant Union of its duty of fair representation, Judge Contie ruled that there could possibly be a factual issue relative to the arbitrariness of the Union based upon the Union's failure to notify Whitten of the hearing on his grievance and its failure to notify him of the fact that it did not intend to pursue his grievance to arbitration. He found no evidence that the Union had acted in bad faith. Further, he concluded that in order to establish a claim for breach of the duty of fair representation against the Union, Whitten must also establish his claim of wrongful discharge against the Company. Since Judge Contie ruled that as a matter of law this claim must fail, he held the claim against the Union must also fail.

Whitten has raised a number of issues on appeal, most relating to the claim that the district court erred in ruling that Anchor had an absolute right under the labor contract in force to discharge him. An analysis of these claims requires an understanding of the contract which was in effect at the time the discharge occurred.

The terms and conditions of employment of all Anchor's drivers (including Whitten) were governed by a labor agreement known as the National Master Automobile Transporters Agreements and Central Conference Areas Supplemental Agreements Covering Truckaway, Driveaway and Local Agreements. Under Article 32 of the general contract, the employer could not discharge or suspend any employee without "just cause", and was required to give the employee at least one warning notice of the complaint against him. No warning notice had to be given to the employee, however, if the cause of discharge was "recklessness resulting in serious accident while on duty . . . ."

The general contract, however, was supplemented by a series of "Uniform Rules and Regulations". Rule 1(a) of the Uniform Rules provided:

```
"RULE AND REGULATION PENALTY
1. ACCIDENTS:
 (a) Major chargeable
 accidents after full
 investigation. Subject to discharge."
```

Where Article 32 of the contract and the Uniform Rules conflicted, the contract was explicit in providing:

"Uniform Rules and Regulations" with respect to disciplinary action covering the Conference as approved by the Joint Conference Committee shall prevail in the application and interpretation of this Article regardless of any provisions of this Agreement to the contrary.

■ Relying upon this court's decision in *Scott v. Anchor Motor Freight, Inc.,* 496 F.2d 276 (6th Cir. 1974), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974), Whitten argues that the court erred in failing to submit to the jury the question of whether Anchor had "just cause" in discharging him. In *Scott, supra,* we held that "When a contract is ambiguous, it is for the jury to determine the meaning of its terms, subject to proper instructions and based upon 'evidence of the surrounding circumstances and the practical construction of the parties'. *Tennessee Consolidated Coal Co. v. United Mine Workers,* 416 F.2d 1192, 1198 (6th Cir. 1969) . . ." 496 F.2d at 280.

Whitten urges that the above cited rule, which led Judge Contie to submit the issue of "just cause" to the jury in *Scott,* compelled him to submit the same issue to the jury here. However, in *Scott,* where the plaintiff was discharged because of certain physical problems which led the company to believe he was unfit to drive, there was no explicit contract provision which gave the Company the right to discharge an employee because he was unfit. Finding the contract to be ambiguous, the court submitted the issue of whether there was

"just cause" for Scott's discharge to the jury.

■ Here the language of the contract is unambiguous. As quoted above, the contract clearly states that the "Uniform Rules and Regulations" will control over any contrary provision in Article 32. Since the Uniform Rules unambiguously provide for what action the employer may take when an employee is involved in an accident, no issue of "just cause" was presented.

Whitten also contends the district judge erred in not submitting to the jury the questions of whether the accident he was involved in was a "major chargeable" one within the meaning of Rule 1(a), and whether the Company made a "full investigation" before discharging him.

■ While the term "major chargeable accidents" is not defined in the contract, Judge Contie found that the evidence was "unequivocal" that Whitten's accident was "major" even viewed in the light most favorable to him. Whitten himself acknowledged as much:

"Q. And by 'major chargeable', what does that phrase mean, as you understand it?

A. It means something over $100 on the cargo damage, or an accident with your truck."

Whitten's own attorney seemed to agree that while there was a difference in the dollar amount of the loss, the lowest figure was nevertheless major:

"As to whether it is major or not, I suppose that in terms of the actual damage you could rule as a matter of law it was major. I suppose it was a major amount of money."

The lowest estimate of damage was $300 to one car and $1,000 damage to the other. In view of this uncontroverted evidence, we conclude that the district judge did not err in holding that as a matter of law this was a "major accident".

Whitten also claims there was a jury question as to whether the accident was "chargeable" to him. This contention is based upon his allegation that Anchor failed to provide him with any equipment to measure the height of his load, and because Anchor should have routed him over the New York Thruway where there were no low bridges and no danger of accident.

■ The undisputed facts showed that Whitten's error in attempting to fit his rig under the bridge was the cause of the accident. The only testimony at trial indicated that this type of accident has always been treated as a major chargeable accident, and that it was one of the many possible types of major chargeable accidents. On this evidence, we conclude that there was no question for the jury as to whether the accident was "chargeable" within the meaning of the contract.

■ Finally, Whitten contends that the court erred in not submitting to the jury the question of whether the Company had conducted a "full investigation" as called for by Rule 1(a) before discharge for a major chargeable accident. The trial judge found as a matter of law that a full investigation had been made and that there was no question for the jury, as no contrary proof had been offered. It is clear that such language was inserted into the rule to protect an employee from arbitrary action where the circumstances of the accident were disputed, not to provide a jury with an unfettered opportunity to override the plain provisions of the contract. Whitten urges that more investigation could have been made, and that therefore it was up to the jury to determine whether what was actually done was "full".

■ Anchor's Safety Director Robert DeLeo met with Whitten and discussed the accident with him. DeLeo drove to the site of the accident, measured the bridge, checked the pavement, and took photographs of the bridge and approach area. Undoubtedly further investigation is always possible. We fail to see, however, in what way it would have altered the facts as they first appeared by Whitten's own filed report. We thus con-

clude the district judge did not err in holding that as a matter of law Anchor was· not liable to Whitten for wrongful discharge.

Whitten next claims that the district judge erred in directing a verdict in· favor of defendant Local No. 377, especially since the court, as noted earlier, found "there is an issue which could be submitted to the Court [sic jury] relative to whether or not the Union acted in an arbitrary manner, but the Court finds no evidence of bad faith." Judge Contie ruled that plaintiff must establish two elements before an award of damages against the Union could be made. First, plaintiff needed to establish that the Union failed to comply with its duty to fairly represent the plaintiff, and second, that the Company breached its contract by improperly discharging Whitten. Since he held as a matter of law that plaintiff failed to prove the second element, he directed a verdict in favor of the Union on Whitten's claim against it.

We need not decide whether the plaintiff must prove a wrongful discharge by his employer before he is entitled to recover against the Union for breach of its duty of fair representation,[2] for we conclude that under the standards set out in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), plaintiff has not produced sufficient evidence to allow submission of his claim to the jury.

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes, supra,* at 190, 87 S.Ct. at 916.

In *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), the Court noted:

"A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." 345 U.S. at 338, 73 S.Ct. at 686

The evidence adduced at trial showed that in early August, 1966, Whitten mailed a grievance to the Union which was filed with the Company on October 18, 1966. In October, 1966, Union agents and Company officials held a meeting at which Whitten's discharge was discussed. Union Agent Abe Schwartz testified that the Company was adamant in its refusal to rehire Whitten because of his involvement in a major accident. Further, Schwartz testified that he took the contract to the Union's attorney, Eugene Green, who advised him that Whitten's discharge was lawful under the contract. Because the Union felt Whitten's grievance was meritless, the Union did not pursue Whitten's claim to arbitration. The evidence further showed that Whitten was not notified of the October meeting at which his grievance was discussed, and that letters he wrote to the Union concerning the status of his grievance were not answered.

While Whitten contended in his complaint that the union failed to pursue his grievance to arbitration because of "personal hostility" towards him, there is no evidence in the record to support this allegation. While there was evidence introduced possibly indicating a

---

**2.** In *Vaca v. Sipes, supra,* the Supreme Court as an alternative ground for reversing the judgment against the union, held that damages caused to plaintiff by the employer's wrongful discharge could not be assessed against the union. The Court held that only those incremental damages caused by the union's refusal to process the grievance should be charged to the union. Interpreting the Supreme Court holding in *Vaca v. Sipes,* this court in *St. Clair v. Local Union No. 515,* 422 F.2d 128 (6th Cir. 1969), noted " . . . that in cases like this, involving a discharge and an alleged failure by the union to take all available steps to remedy

the employee's complaint, the increment of damages caused by the union's breach of duty is virtually *de minimis.*" 422 F.2d at 132. Here, because we conclude that plaintiff has failed to prove a violation by the union of its duty of fair representation, we need not decide whether the union would have been liable in damages for breach of its duty of fair representation if such breach had been found. Cf. *Hines v. Local Union No. 377,* 506 F.2d 1153 (6th Cir. 1974), *cert. granted sub nom. Hines v. Anchor Motor Freight, Inc.,* 421 U.S. 928, 95 S.Ct. 1654, 44 L.Ed.2d 85 (1975).

"sweetheart" relationship between Union officials and the Company, there was no evidence showing that personal animosity was behind a refusal to arbitrate the grievance. Rather, the only testimony at trial on this question indicates that the Union's good faith belief that Whitten's grievance was meritless led to its decision not to arbitrate. This court has held that conclusory allegations of discrimination are insufficient if an action against the Union for breach of its duty. of fair representation is to be maintained. Rather, an affirmative showing by plaintiff that the Union's action or inaction was motivated by bad faith is required. *Hines v. Local Union No. 377, Chauffeurs, Team., W. & H.,* 506 F.2d 1153 (6th Cir. 1974); *Balowski v. International Union, United A., A. and A., Imp. Workers,* 372 F.2d 829 (6th Cir. 1967). Here the evidence adduced at trial does not support Whitten's allegation that personal hostility was the motivation behind the Union's refusal to pursue his grievance to arbitration.

 Whitten contends the evidence at trial showed that the Union did not inform him of the October meeting at which his grievance was discussed, that he was given no notice that the Union did not intend to pursue his grievance further, and that it did not answer his letters he wrote inquiring about the status of his grievance. Judge Contie stated in his ruling that this might be evidence from which a jury could infer that the Union had acted in an arbitrary manner.

 We conclude that this evidence would not be sufficient to support a jury verdict against the Union for breach of its duty of fair representation. Appellant in his brief states: "Contrary to normal practice, the Union never advised Whitten either before or after its meeting with the Company . . .". However, we have found no evidence in the record to suggest that Whitten's grievance was processed by the Union differently than grievances of other Union members. The Union may have acted negligently or exercised poor judg-

ment in failing to keep Whitten informed of the status of his grievance, but this is not sufficient to support a claim of unfair representation. *Dill v. Greyhound Corp.,* 435 F.2d 231 (6th Cir. 1970) *cert. denied* 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971). A section 301 remedy against the Union, under *Vaca v. Sipes, supra,* is premised upon proof of "the union's *wrongful* refusal to process the grievance", *Vaca v. Sipes,* 386 U.S. at 185, 87 S.Ct. at 914. We conceive that wrongful refusal to process a grievance is properly judged in the light of the Union's undoubted obligation, as the statutory and contractual agent of the employee, to represent his interests honestly and in good faith, and thus to refrain from discriminatory conduct which effectively prevents the employee from pursuing his legitimate claim that the employer has breached the contract. The allegation that there may have existed hostility between Whitten and the Union no doubt compels the trial court and us to examine the record with particular care to insure that the Union's refusal to process the grievance was not wrongful. However, absent evidence that the refusal to arbitrate the grievance was motivated by ill will toward Whitten, it is clear under *Vaca v. Sipes, supra,* that the Union was not compelled to arbitrate a grievance which, under any standard, was without merit.

*Vaca v. Sipes* seeks to encourage the settlement of meritorious grievances in an honest and sensible way. It recognizes the Union's right to preserve its own integrity in good faith representation of its members by freeing it from an obligation to pursue meritless claims. To have required the Union to have progressed further on penalty of risking an adverse jury verdict would go altogether against the spirit of *Vaca* :

"For if a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the

union's incentive to settle such grievances short of arbitration would be seriously reduced." *Vaca v. Sipes, supra,* at 192–93, 87 S.Ct. at 918

Accordingly, the judgment of the district court is affirmed. Costs to appellees.