Kenneth WOOD, et al., Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.

Harry HIGHT, et al., Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.

Nos. G80–742 CA, G83–727 CA.

United States District Court,
W.D. Michigan, S.D.

Sept. 11, 1984.

Dennis C. Kolenda and Joseph J. Vogan, Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., for plaintiffs.

Gordon J. Quist, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for Kroger.

Steven F. Spender, Hicks, Weston & Spender, Flint, Mich., Terrence V. Page, Clark, Hardy, Lewis, Pollard & Page, Birmingham, Mich., for Hamady Bros.

H. Rhett Pinsky and Edward Smith, Pinsky, Smith & Soet, Grand Rapids, Mich., for Local No. 406.

## OPINION

BENJAMIN F. GIBSON, District Judge.

In August of 1980, the Kroger Company transferred its Kentwood warehouse to Hamady Bros. Food Markets, Inc. The transfer was made by a sale of assets. Approximately 200 people, represented by Teamsters Local 406, worked in the Kroger warehouse at the time of the transfer.

When Hamady assumed control of the warehouse, it reduced the workforce. Contending that it was not bound by the collective bargaining agreement between Local 406 and Kroger, Hamady did not retain those workers with the highest seniority. Instead, it took applications, conducted physicals, and ultimately made job offers to approximately 100 Kroger employees. Hamady did, however, proceed to bargain with Local 406, and a new contract was signed. The workers hired by Hamady did not retain the level of benefits they had enjoyed during their tenure with Kroger.

This dispute has arisen over a clause in the Kroger contract with Local 406 which provided that the agreement would be "binding not only on the parties hereto, but also on their successors and assigns." Plaintiffs, a group consisting largely of those not hired by Hamady Bros., claim that Kroger was bound by this clause to

require, as a condition of the sale, that Hamady accept the collective bargaining agreement.

Shortly after the planned transfer to Hamady was made public, the plaintiffs began to doubt whether Local 406 was making sufficient efforts to protect their seniority rights. Consequently, plaintiffs hired their own attorney and, to the extent possible under the terms of their contract, took part in the three step grievance procedure. They ultimately filed suit against Kroger in state court, seeking a temporary restraining order to block the sale. The order was granted but later dissolved. The case was removed to federal court and, after a hearing, this Court ordered all parties to arbitration. The Court provided that, because there was some question about the Union's efforts to fairly represent the interests of the plaintiffs, the plaintiffs would be entitled to their own counsel at the arbitration hearing. Hearings were held during September of 1981. The arbitrator ruled in favor of Kroger, finding that the contract did not require Kroger to impose the collective bargaining agreement on Hamady.

Plaintiffs have sued Kroger, alleging a breach of the successors and assigns clause of the contract. They have also sued Hamady, claiming that, under federal common law, Hamady was bound to abide by the Kroger contract. Finally, they have sued Local 406, alleging that it breached its duty of fair representation by not protecting the seniority rights afforded by the Kroger contract.

Motions in limine were filed by defendants Local 406 and the Kroger Company, requesting the Court to exclude "all evidence with respect to the conduct of defendant Union which occurred prior to and/or outside of the arbitration proceeding conducted September, 1981." The Court declined to rule on these motions before trial concluding that, because the objections were based on the relevance of the testimony, the Court would be in a better position to consider their validity if they were raised at trial. The motions were renewed by Local 406 and the Kroger Company shortly after plaintiffs' first witness was called. Defendant Hamady Bros. joined in support of the motions.[1]

Defendants' basic position is that any relevant breach by the Union of its duty of fair representation must have occurred at the arbitration hearing. If there was no breach at those proceedings, they argue, the arbitrator's decision in favor of Kroger is final.[2] Thus, evidence of the Union's conduct prior to the arbitration hearing is irrelevant. Plaintiffs offer two theories in support of admitting this evidence. The Court finds merit in both of these theories and has therefore decided that evidence of the Union's prior conduct will be admitted.

I. Evidence of prior conduct to explain conduct at the arbitration

Plaintiffs have claimed that the Union breached its duty of fair representation at the arbitration hearing. Plaintiffs can only succeed on this claim by showing that the union acted arbitrarily, discriminatorily, or in bad faith during its presentation of the plaintiffs case at those proceedings. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 309 (6th Cir.1975), *cert. denied*, — U.S. —, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983).

In order to prove their claim, the plaintiffs have the right to introduce evidence that will allow the jury to determine the motives behind the Union's actions at the arbitration hearing. Evidence of the increasing hostility between the Union and the plaintiff group is relevant to this determination. *See Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of*

---

**1.** The Court has not made an effort in this opinion to identify which arguments were made by which defendants. Instead, all arguments are attributed to "defendants" generally.

**2.** Whether or not the arbitrator's decision would be binding in favor of Hamady is disputed. Hamady did not take part in the arbitration proceeding. The Court expresses no opinion on this matter.

*America*, 469 F.2d 181 (4th Cir.1972). Thus, the Court has decided to admit evidence of prior conduct which sheds light on the motives of the Union at the arbitration hearing.

Contrary to the fears expressed in defendants' briefs, this ruling by no means suggests that plaintiffs can prove a breach of the duty of fair representation merely by showing bad faith conduct outside the arbitration hearing. The jury will be carefully instructed that the plaintiffs must show not only that the Union proceeded in bad faith, but that the Union's misconduct at the arbitration hearing seriously undermined the arbitration decision. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976).

This theory for admissibility, however, does not justify admitting into evidence all union conduct prior to the arbitration. It only justifies admission of evidence that serves to explain the Union's conduct at the arbitration. Plaintiffs' second theory, however, provides for the admissibility of a broader class of evidence.

II. Breach by conduct of union prior to arbitration

Plaintiffs argue that they have alleged a breach by the Union of its duty of fair representation that is independent of the alleged breach at the arbitration hearing. They contend that the Union breached its duty by failing to investigate fully the sales transaction, file promptly the grievances, and pursue vigorously those grievances. Because of what they believed to be an inadequate performance by the Union, plaintiffs felt compelled to devote considerable amounts of their own time, energy, and money to an attempt to preserve what they believed to be their contractual seniority rights. Plaintiffs maintain that they were damaged by the Union's breach to the extent of the expenses incurred in their own efforts to assert their contract

rights. Thus, they contend, they are entitled to present evidence of all prior Union conduct to prove a breach independent of the breach which allegedly occurred at the arbitration.

Defendants vigorously argue that any breach by the Union of its duty of fair representation prior to the arbitration hearing is irrelevant. To recover against the Union, defendants argue, the plaintiffs must recover against the employer on the contract claim. Defendants point out that the only way plaintiffs can show a breach of the contract in this case is to show that the otherwise binding decision of the arbitrator was undermined by the Union's failure to fairly defend plaintiffs' rights. *Hines v. Anchor Motor Freight, supra* at 568, 96 S.Ct. at 1058.

■ This Court is of the opinion that the duty of fair representation is not defined so narrowly. Plaintiffs have cited cases in which courts have awarded damages against a union even when the employer was not found to be in breach of the labor contract. *Dutrisac v. Caterpillar Tractor Co.*, 511 F.Supp. 719 (N.D.Cal.1983), *aff'd*, 113 L.R.R.M. (BNA) 3532 (9th Cir.1983); *Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295 (5th Cir.), *cert denied*, 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981); *Foster v. Bowman Transportation Co.*, 562 F.Supp. 806 (N.D.Ala.1983). None of these cases deals with a situation where the union actually went to arbitration, as Local 406 did. Nevertheless, the Court finds valid the general proposition advanced by these cases. If a union fails to fairly represent the contractual rights of a group of employees, and its nonaction is either "arbitrary, discriminatory, of in bad faith," the employees are entitled to prevail against the union for expenses incurred in seeking a *fair* resolution of their claim, even if they do not prevail against the employer on the contract.[3]

---

**3.** The Court is not of the opinion that the plaintiffs, if they succeed in proving a breach by the Union, are entitled to compensation for *all* ex-

penses incurred in this action. For example, if the Union did an adequate job of presenting the initial grievances, the plaintiffs should not be

Defendants have cited numerous cases for the proposition that the plaintiffs must prevail against the employer on the contract in order to prevail against the Union for a breach of the duty of fair representation. *See, e.g., St. Clair v. Teamsters Local 515*, 422 F.2d 128 (6th Cir.1969); *Balliet v. Blue Ridge Pressure Castings, Inc.*, 572 F.Supp. 796 (E.D.Pa.1983); *Kemp v. U.S. Postal Service*, 116 L.R.R.M. 2931 (E.D.Mich.1984).

Although these cases appear, at first glance, to be at odds with those cited by plaintiffs, the Court has reconciled the cases by distinguishing the type of damages sought by the employees. The cases cited by defendants, which emphasize that the employees cannot prevail against the Union without prevailing against the employer on the contract claim, appear to be contemplating back pay as a remedy. It is not disputed that the plaintiffs in this case will be precluded from recovering the typical compensatory relief of back pay if they do not prevail against Kroger.[4] In the cases cited by plaintiffs, however, where the employees were clearly seeking a damage award of attorney fees and costs, the courts were willing to allow that limited recovery against the union.

The Court is persuaded that the Union's duty of fair representation in cases where there has been an arbitration is not limited to its conduct at the arbitration hearing. The Union is the exclusive bargaining representative of these employees. Because it holds that exclusive position, it bears the responsibility of fairly representing the claims of all of its members in a manner that is not arbitrary, discriminatory, or in bad faith, *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964). *See* 29 U.S.C. § 159 (1976). That duty of representation begins when the claims are presented to the Union by the members.

One thing that the jury will have to consider in this case is whether the plaintiffs' claims against Kroger were of any merit.[5] If they were not, the Union may succeed in showing that it did not arbitrarily fail to pursue them. If, on the other hand, the claims of the employees were not frivolous, the Court does not believe that the mere fact of the arbitration should cure the Union's past misconduct. If the jury finds a breach of the duty of fair representation, the Union should bear the expenses incurred by the plaintiffs in performing the job the Union should have been doing all along.

compensated for the expense of filing duplicative grievances. They should be compensated for the amount they expended to get a *fair* resolution of their claim less the value of the services actually rendered by the Union. Because the issues of liability and damages have been bifurcated in this action, these are questions, if reached at all, that will be resolved in the damage phase of this proceeding.

**4.** Of the cases presented by defendants, *Balliet v. Blue Ridge Pressure Castings, Inc.*, 572 F.Supp. 796 (E.D.Pa.1983), presents facts most similar to those before this Court. Two arbitration hearings were held in a matter involving a layoff dispute. Plaintiffs claimed that the Union breached its duty of fair representation by failing to adequately represent their interests during the layoff dispute and at the first arbitration hearing. Plaintiffs did not dispute, however, that the Union did an adequate job of representing their interests at the second arbitration hearing where plaintiffs were also represented by their own counsel. The Court held that the second arbitration hearing "completely and ir-

revocably eradicated any lack of fair representation which might have occurred at the initial hearing." *Id.* at 798.

*Balliet* is distinguishable from the case before this Court. It appears from the facts recited that plaintiffs did not attempt to represent their own interests prior to or following the first arbitration hearing. Thus, even if there was a breach by the Union prior to the second arbitration hearing, the plaintiffs incurred no monetary harm. Although the plaintiffs did hire an attorney for the second arbitration hearing, they did not seek to prove a breach by the Union at that hearing. Thus, they would not be entitled to the expenses they incurred by supplying their own lawyer.

**5.** Of course, the jury cannot use hindsight in favor of either party in its determination of whether the plaintiffs' claims were meritorious. It must evaluate those claims in light of what was known, or could reasonably have been discovered, by the parties at the time the dispute arose.

■ Defendants have also argued that, once there has been an arbitration hearing, the federal court has no jurisdiction to hear a claim of a breach of the duty of fair representation that occurred prior to the arbitration. The Court finds no merit in this argument.

As a general rule, the NLRB has exclusive jurisdiction over activities which are arguably protected by § 7 of the National Labor Relations Act (NLRA) or which constitute an unfair labor practice under § 8 of the NLRA. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), however, created an exception to the general rule by granting federal courts jurisdiction over suits for violations of labor contracts. Section 301 also has been interpreted to give federal courts jurisdiction over claims of a union's breach of its duty to fairly pursue employees contract claims. *See Amalgamated Association of Street, Electric Railway and Motor Coach Employees of American v. Lockridge,* 403 U.S. 274, 301–302, 91 S.Ct. 1909, 1925–1926, 29 L.Ed.2d 473 (1971).

■ In the present case, the plaintiffs have alleged a breach by Kroger of the collective bargaining agreement. They have also alleged that Local 406 has failed, from the grievance stage onward, to fairly represent their interests with respect to this contract claim. Thus, the Court concludes that plaintiff's claim falls within the grant of jurisdiction of section 301.[6]

### CONCLUSION

For the above reasons, the Court will admit evidence of conduct of the Union prior to the arbitration hearing. It notes, however, that defendants remain free to challenge the admissibility of any evidence if they believe its probative value is outweighed by its prejudicial effect. Fed.R. Evid. 403.

---

6. Defendants have cited cases which held that a federal court did not have § 301 jurisdiction to hear a claim alleging a breach of the duty of fair representation. The Court notes that these cases involved disputes between the union and its employees, rather than disputes arising out of an employer's alleged violation of a collective bargaining agreement. *See, e.g., Hayes v. Con-* *solidated Service Corporation,* 517 F.2d 564 (1st Cir.1975) (court found as a fact that there was no collective bargaining agreement in effect); *Kupec v. Plumbers, Local 75,* 101 L.R.R.M. 3052 (E.D.Wis.1979) (employee claimed that journeymen's union did not properly refer him for employment through its hiring hall procedures).