**Jesse T. KAISER, Plaintiff,**

v.

**BUCKEYE YOUTH CENTER, Defendant.**

Civ. A. No. C–2–89–1036.

United States District Court, S.D. Ohio, E.D.

Feb. 4, 1993.

---

Larry Robert Zingarelli, Columbus, OH, for plaintiff.

Joseph N. Rosenthal, Ohio Atty. Gen., Columbus, OH, for defendant.

## MEMORANDUM AND ORDER

BECKWITH, District Judge.

Plaintiff Jesse T. Kaiser brings this action under 42 U.S.C. § 2000e–5(f)(3) alleging that defendant Buckeye Youth Center discriminated against him in his employment because of his race (white) by transferring him from the third shift to the first shift. While working the night shift at the Buckeye Youth Center, Mr. Kaiser was employed during the daytime by Franklin County. He lost his county job when he was transferred to the first shift in December 1988. This matter is before the Court prior to trial to determine whether Mr. Kaiser may recover as a remedy the wages he lost from his county job.

Jesse Kaiser was employed by the Buckeye Youth Center for about 29 years. He alleges that Buckeye Youth Center had a well established policy of permitting employees with long seniority to select their shift assignments. He asserts that defendant ignored his preference and transferred him to the day shift. Consequently, he was forced to resign his daytime job, losing nearly $40,000 in wages. (Mr. Kaiser retired from his employment with the State of Ohio in March 1991.)

■ The **issue presented** is whether the wages Mr. Kaiser lost as the result of defendant allegedly transferring him to the day shift because of his race are recoverable under Title VII. Section 2000e–5(g) provides, in relevant part:

> [T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay, ..., or any other equitable relief the court deems appropriate.

The plain language of the statute restricts the term "back pay" to the compensation for performing work for the employer who discriminated against the worker ("reinstatement or hiring of employees, with or without back pay ..."). The courts have so interpreted § 2000e–5(g). Thus, the question becomes whether compensation from another source which the employee loses as a result of the sued employer's unlawful discriminatory conduct can be recovered as "other equitable relief" under 42 U.S.C. § 2000e–5(g).

■ Generally, the language of a statute, whenever possible, will be construed to provide a remedy for every wrong. The seminal case construing the remedy provi-

sions of § 2000e–5(g) is *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). There the Supreme Court held that "back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for the injury suffered through past discrimination." 422 U.S. at 421, 95 S.Ct. at 2373 (footnote omitted). In reaching that result, Justice Stewart stated:

It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it is the historic purpose of equity to "secur[e] complete justice," *Brown v. Swan,* 10 Pet. 497, 503 [9 L.Ed. 508 (1836)]; see also *Porter v. Warner Holding Co.,* 328 U.S. 395, 397–398 [66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946)]. "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood,* 327 U.S. 678, 684 [66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)]. ... And where a legal injury is of an economic character,

"[t]he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed as near as may be, in the situation he would have occupied if the wrong had not been committed." *Wicker v. Hoppock,* 6 Wall. 94, at 99 [18 L.Ed. 752 (1867)].

The "make whole" purpose of Title VII is made evident by the legislative history.

422 U.S. at 418–419, 95 S.Ct. at 2372.

■ However, consequential, compensatory damages are a remedy at law. The express language of § 2000e–5(g) limits the remedies for violation of Title VII to reinstatement, hiring, with or without back pay, and "other equitable relief the court deems appropriate." It does not provide for a remedy at law. The courts have consistently held that a plaintiff is not entitled to compensatory damages under § 2000e–5(g). *Boddy v. Dean,* 821 F.2d 346, 352 (6th Cir.1987); *Farmer v. ARA Services, Inc.,* 660 F.2d 1096, 1107 (6th Cir.1981); *Harrington v. Vandalia–Butler Board of Education,* 585 F.2d 192, 197 (6th Cir.1978), *rev'd on other grounds,* 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979); *EEOC v. Detroit Edison Company,* 515 F.2d 301, 309 (6th Cir.1975), *rev'd. on other grounds,* 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977).

As equitable remedies, courts have awarded fringe benefits: Christmas bonuses, tips, and the like. "Developments: Employment Discrimination and Title VII of the Civil Rights Act of 1964," 84 Harv. L.Rev. 1109, 1259–1260, n. 350 (1971). But courts have limited Title VII remedies "to the relief of the same general kind, that is, equitable relief in the form of restitution." *EEOC v. The Detroit Edison Company,* 515 F.2d at 309.

Plaintiff relies on *Berry v. Stevinson Chevrolet,* 804 F.Supp. 121 (D.Col.1992). In *Berry,* the plaintiff proved his former employer retaliated against him for filing a complaint of discrimination by reporting an alleged forgery to the sheriff's office, causing him to be prosecuted for theft and forgery. 804 F.Supp. at 134. The district court held that the plaintiff was entitled to an award of general damages to make him whole for his former employer's violation of 42 U.S.C. § 2000e–3(a) where he would otherwise have been without a remedy under Title VII. 804 F.Supp. at 136. The *Berry* court relied on *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, ——, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992) in which the Supreme Court held that a high school student may sue under Title IX for sexual harassment and receive general damages for that harassment. However, *Franklin* is not persuasive authority when construing § 2000e–5(g), because the Civil Rights Remedies Equalization Amendment of 1986 specifically authorized remedies at law and equity in Title IX

cases. 42 U.S.C. § 2000d–7(a)(2). See, 112 S.Ct. at 1036. Thus, the statute itself authorizes legal remedies, which include an award of general damages. Under Title VII, there is a long history of courts construing § 2000e–5(g) not to include remedies at law.

Two cases illustrating this point are *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1363–1365 (11th Cir.1982) and *Smith v. Office of Personnel Management*, 778 F.2d 258, 262 (5th Cir.1985). In *Walker*, the Court held that a plaintiff who suffered a retaliatory discharge was not entitled to recover moving expenses necessitated by his relocation following the discharge, losses incurred in the sale of his wife's business, or damages to their credit rating. *Id.* Similarly, in *Smith* the Fifth Circuit, relying on Title VII cases, construed 42 U.S.C. § 2000e–16 to preclude the plaintiff from recovering consulting income lost as the result of defendant's discriminatory conduct. *Id.* See also, *St. Clair v. Teamsters Local 515*, 422 F.2d 128, 132 (6th Cir.1969).

Here Mr. Kaiser alleges a discriminatory transfer to the day shift; but since he has retired, he no longer seeks an order that he be returned to the night shift. He suffered no wage loss in his state employment as a result of the transfer. His only consequential damage is the loss of income from his day job with the county. However, compensatory damages are not recoverable under Title VII. There would appear to be no remedy available to him, aside from a declaration that defendant discriminated against him because of his race, unless the "other equitable relief the court deems appropriate" language of § 2000e–5(g) entitles him to recover the lost wages from his county job. The Court concludes that it does not, because such consequential damages have consistently been held to be a legal remedy unavailable under Title VII.

The Court recognizes that, given the clear intent of Title VII to remedy racial discrimination in employment, this result is anomalous. Although the absence of an economic remedy should Mr. Kaiser prevail on the merits is troubling, the clear language of § 2000e–5(g) and consistent history of the courts construing that language to bar a legal remedy require that result. Although of no comfort to Mr. Kaiser, it would appear in hindsight that his only hope for avoiding his present predicament would have been to seek, from an appropriate court or adjudicative body, temporary injunctive relief prohibiting the transfer. Even that remedy may have been problematic, considering Title VII's requirement that an employee wronged by an unlawful act of discrimination must first file a charge with the Ohio Civil Rights Commission.

In summary, the Court HOLDS that should Mr. Kaiser prevail on the merits of his employment discrimination claim, 42 U.S.C. § 2000e–5(g) does not provide him with the remedy of consequential damages for the wages he lost from a second job.